**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARTHA L. PIKE; CYNTHIA J. KINCER,
          *Plaintiffs-Appellees,*

v.

KERMIT L. OSBORNE, individually
and in his capacity as Sheriff of
Wythe County, Virginia,
          *Defendant-Appellant.*

No. 01-2050

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-00-437, CA-00-438)

Argued: April 4, 2002

Decided: July 29, 2002

Before NIEMEYER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
W. Craig BROADWATER, United States District Judge
for the Northern District of West Virginia,
sitting by designation.

Reversed and remanded by published opinions. Judge Niemeyer,
Senior Judge Hamilton, and Judge Broadwater wrote opinions.

## COUNSEL

**ARGUED:** Jim Harold Guynn, Jr., GUYNN LAW OFFICES, Roa-
noke, Virginia, for Appellant. Donald Wise Huffman, HUFFMAN &

NIXON, P.C., Roanoke, Virginia, for Appellees. **ON BRIEF:** Robert Hines, MONTGOMERY & HINES, Jonesville, Virginia, for Appellees.

**OPINION**

NIEMEYER, Circuit Judge:

Cynthia J. Kincer and Martha L. Pike, former employees of the Wythe County (Virginia) Sheriff's Office, commenced this action under 42 U.S.C. § 1983 against Wythe County Sheriff Kermit L. Osborne, alleging that he failed to reappoint them because they supported his opponent in a recent election and therefore that he violated their First Amendment right not to be retaliated against based on their speech. The district court denied Sheriff Osborne's claim of qualified immunity, and he appealed. For the reasons that follow, we reverse the district court's denial of qualified immunity.

I

Both plaintiffs in this case were dispatchers for the Wythe County Sheriff's Department, a department in which dispatchers were privy to confidential information, particularly about ongoing investigations. Cynthia Kincer was hired by former Sheriff Wayne Pike in 1992 as a part-time secretary and later was promoted to the position of dispatcher. Martha Pike was hired as a dispatcher in 1996, also by Sheriff Pike whom she later married.

In June 1998, Sheriff Wayne Pike resigned his position as sheriff to take a job with the Virginia Parole Board, and Kermit Osborne was appointed to complete his unfinished term. The following year, Osborne announced his intention to seek the Republican party's nomination for sheriff for the November 1999 general election. Wayne Pike's son also sought that nomination, and his campaign was supported by both Martha Pike and Cynthia Kincer. After Osborne won the Republican party nomination, Wayne Pike resigned his position with the Virginia Parole Board and ran as an independent against Osborne in the general election. Martha Pike and Cynthia Kincer

openly supported Wayne Pike's campaign, and Osborne was aware of their support for his opponent. Osborne, however, defeated Wayne Pike in the general election.

During the month following his election, Sheriff Osborne notified the plaintiffs that they would not be reappointed when their terms expired on December 31, 1999. According to Sheriff Osborne, the plaintiffs were not rehired because of confidentiality concerns. He claimed that several months earlier, information had leaked from the dispatchers' office about a murder investigation, and Wayne Pike had made comments on the local radio station, "disclosing things that [were] in an investigative stage" and therefore confidential. Sheriff Osborne admits, however, that both plaintiffs had always received satisfactory or better job reviews.

After Kincer and Pike commenced this action under 42 U.S.C. § 1983 for compensatory and punitive damages, Osborne filed a motion for summary judgment. The district court granted Osborne's motion to dismiss the claims made against him in his official capacity but denied his motion, based on qualified immunity, to dismiss the claims made against him in his individual capacity. Osborne appealed, claiming that he is entitled to qualified immunity either because the plaintiffs failed to allege a constitutional violation or because the law in this area was not clearly established at the time of the alleged violation.

## II

To resolve the qualified immunity issue in this case, we first determine whether the facts alleged, taken in the light most favorable to the plaintiffs, demonstrate that Sheriff Osborne violated a constitutional right of the plaintiffs. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If we determine that the plaintiffs have alleged a violation of a constitutional right, we then determine whether the contours of the right were clearly established such that "a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1997).

Sheriff Osborne contends that the plaintiffs failed to show that they were not rehired because of their support for Wayne Pike's campaign

and therefore that they have failed to allege a violation of their First Amendment rights. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (holding that the plaintiff has the initial burden of showing that his conduct was constitutionally protected and that the conduct was a "substantial factor" or a "motivating factor" in the firing decision). In this case, the evidence on which the plaintiffs relied to establish the necessary causal relationship is thin and circumstantial. It requires drawing an inference of retaliation from the timing of Osborne's actions after the election and the fact that these two women, allegedly the only employees who openly supported Wayne Pike's campaign, were the only employees who were not reappointed. Although the plaintiffs' evidence is sparse, because we must take the evidence in the light most favorable to them, we will assume that they have made a sufficient showing on this first hurdle in the qualified immunity analysis.

With that assumption, we proceed to determine whether the law regarding retaliatory employment decisions was clearly established such that Sheriff Osborne should have known that refusing to reappoint the plaintiffs would violate their constitutional rights. In determining whether a retaliatory employment decision violates the First Amendment, we balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting efficiency of the public services it performs through its employees." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1960); *Connick v. Meyers*, 461 U.S. 138, 149 (1983)). We have recognized that in these cases "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, yet difficult to apply, and not yet well defined." *Dimeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995); *see also McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1999). Given this "difficult-to-apply" balancing test, we cannot conclude that in this case a First Amendment violation was so clearly established that a reasonable official in Sheriff Osborne's position would know, without having to engage in guesswork, that the plaintiffs' interest in commenting on an issue of public concern outweighed the sheriff's interest in maintaining a loyal and efficient sheriff's department. Because the law in this area was not clearly

established at the time the plaintiffs were not reappointed, Sheriff Osborne is entitled to qualified immunity.

For the foregoing reasons, we reverse the order of the district court denying Sheriff Osborne qualified immunity and remand with instructions to dismiss the complaint against him.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

HAMILTON, Senior Circuit Judge, concurring in the judgment:

I agree with Judge Niemeyer's apparent conclusion that, assuming, *arguendo*, the plaintiffs have alleged a violation of the First Amendment, Sheriff Osborne was entitled to qualified immunity because the law in December 1999 was not clearly established that a sheriff in Virginia could not lawfully terminate for political affiliation reasons a dispatcher with privity to confidential information. I write further to more fully explain my rationale for finding that Sheriff Osborne was entitled to qualified immunity.

The law in this circuit is clear that sheriffs in Virginia have the right to lawfully terminate their deputies for political affiliation reasons. *Jenkins v. Medford*, 119 F.3d 1156, 1163-65 (4th Cir. 1997) (*en banc*) (overruling *Jones v. Dodson*, 727 F.2d 1329 (4th Cir. 1984)). However, we have not addressed the question of whether sheriffs have the right to lawfully terminate their dispatchers for political affiliation reasons. Our decision in *Jenkins* sends mixed signals to sheriffs in this regard. On the one hand, a dispatcher with access to confidential information, arguably, is the equivalent of your everyday clerical worker, especially when, as in this case, each dispatcher did mostly clerical work, did not wear a uniform, did not have a badge, had no arrest authority, and had no discretionary authority. *Id.* at 1165 ("[D]ismissals based on today's holding [are limited] to those deputies actually sworn to engage in law enforcement activities on behalf of the sheriff. We issue this limitation to caution sheriffs that courts examine the job duties of the position, and not merely the title, of those dismissed. Because the deputies in the instant case were law enforcement officers, they are not protected by this limitation.") (footnotes omitted), *id.* n.66 (citing *Zorzi v. County of Putnam*, 30 F.3d 885, 892 (7th Cir. 1994), which held that dispatchers were not

involved in law enforcement activities or making policy, and, therefore, political affiliation was not an inappropriate job requirement). On the other hand, *Jenkins* says privity to confidential information permits a lawful termination based on political affiliation reasons. 119 F.3d at 1164 ("If the position resembles a policymaker, a communicator, or a privy to confidential information, then loyalty to the sheriff is an appropriate requirement for the job.") (internal quotation marks and footnote omitted).

*Jenkins* is confusing, at best, on the point of whether sheriffs in Virginia can lawfully terminate for political affiliation reasons dispatchers with privity to confidential information. Accordingly, because the law was not clearly established in December 1999 that a sheriff could not lawfully terminate for political affiliation reasons a dispatcher with privity to confidential information, Sheriff Osborne was entitled to qualified immunity.*

BROADWATER, District Judge, concurring in the judgment:

I agree with Judge Niemeyer's opinion insofar as his opinion concludes that the district court's judgment should be reversed. However, I agree with the reasoning of Judge Hamilton's concurring in the judgment opinion, which correctly explains why Sheriff Osborne was entitled to qualified immunity.

---

*For purposes of our discussion, Sheriff Osborne does not dispute that his decision not to reappoint plaintiffs was tantamount to a dismissal of the plaintiffs from their employment.