# United States Court of Appeals

## For the First Circuit

No. 03-1099

STEPHEN D. WRIGHT,

Plaintiff, Appellant,

v.

COMPUSA, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,[*] Senior District Judge.

Gretchen Van Ness, for appellant.
Barbara O'Donnell, with whom Alida Bográn-Acosta and Robinson
& Cole LLP, were on brief, for appellee.

December 19, 2003

_____

[*] Of the Northern District of California, sitting by designation.

**TORRUELLA, Circuit Judge**. Plaintiff-appellant Stephen D. Wright ("Wright") appeals the award of summary judgment to his former employer, defendant-appellee CompUSA, Inc. ("CompUSA"), on his claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B, § 4. After careful review, we affirm the district court's decision regarding disability discrimination. We reverse and remand Wright's retaliation claim, however, because the record creates a genuine issue of material fact as to whether CompUSA's proffered reason for terminating Wright was pretextual.

## I. Background

Wright began working for CompUSA in February 1994. In 1996, he became Direct Sales Manager at the Brighton, Massachusetts store, a position he held until his discharge in August 1998. In May 1997, Wright was diagnosed as suffering from Attention Deficit Disorder ("ADD"), and he began taking Ritalin. Wright first informed his manager that he suffered from ADD in August 1997. He did not request accommodation at that time.

In June 1998, a new general manager, Gregory Caughman, was assigned to the Brighton store. Soon after, Wright began experiencing severe stress and anxiety on the job, which exacerbated his ADD symptoms. Around June 30, Wright experienced

a panic attack at work and sought his physician's advice, which included increasing his level of medication. During July, Wright was involved in several conflicts with Caughman, and he attributes the severity of his symptoms during this period to Caughman's managerial style. Wright also alleges that his symptoms and need for increased medication were alleviated when Caughman was gone from the office during part of that month. Toward the end of the month, Wright's physician recommended that Wright take a leave of absence from work. CompUSA granted Wright a two-week medical leave from July 23, 1998 to August 4, 1998. While on medical leave, Wright requested a transfer to the Braintree store. This request was denied. Wright then requested that he be allowed to work from home. This request was also denied.

Wright returned to work on August 5th with letters from his physician, Dr. Horan, and from his psychiatrist, Dr. Song. A note from Dr. Horan approving Wright's return to normal duties was accompanied by a letter indicating that Wright was being treated for a medical condition which required him to take medications with meals three times a day. Dr. Song's letter noted that Wright had responded positively to treatment with Ritalin, described the symptoms of ADD, and made specific recommendations regarding how CompUSA could accommodate Wright's symptoms, including allowing Wright to determine the length of time needed to complete tasks, avoiding early morning meeting times, and clarifying work

assignments in writing. Dr. Song's letter also mentioned that discussions with Wright indicated to Dr. Song that Wright's difficulties in June and July were caused by increased stress due to the new managerial style in place since Caughman's arrival. Wright alleges that after receiving this letter Caughman nevertheless continued to issue orders contrary to Dr. Song's suggested accommodations.

On August 11, 1998, Wright was scheduled to attend a meeting for Direct Sales Managers at the CompUSA store in Danvers. On the night of August 10th, Wright's son suffered a head injury at work, and when Wright realized the following morning that he needed to take his son to see the doctor, he called Caughman to explain that he would be delayed. Wright and Caughman spoke on the phone several times that day, and Caughman told Wright not to come to the Brighton store until he had gone to Danvers. When Wright was finished caring for his son, he was unable to reach anyone at the Danvers store by phone. Wright contacted a manager at another store who had attended the Danvers meeting and asked him to fax the materials from the meeting to the Brighton store. After confirming that the materials had been faxed to Brighton, Wright arrived at the Brighton store and attempted to meet with Caughman to give him the materials. Caughman called Wright into his office and discharged him, allegedly for insubordination due to Wright's failure to go to Danvers as instructed.

In February 1999, Wright filed a disability discrimination and retaliation complaint with the Massachusetts Commission Against Discrimination. No action was taken on Wright's complaint. Wright withdrew his administrative claim and filed a civil action in Suffolk Superior Court, adding two individual defendants, Caughman and Robert Morsilli (CompUSA's Regional Manager). On September 12, 2001, CompUSA removed the case to federal court. On December 28, 2001, the district court granted the individual defendants' motion to dismiss, Wright v. CompUSA, Inc., 183 F. Supp. 2d 308 (D. Mass. 2001), leaving CompUSA as the sole defendant. On December 17, 2002, the district court granted CompUSA's motion for summary judgment on each of Wright's claims.

## II. **Analysis**

Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's order granting summary judgment de novo, construing the record in the light most favorable to Wright and resolving all reasonable inferences in his favor. Rodríguez v. Smithkline Beecham, 224 F.3d 1, 5 (1st Cir. 2000).

### A. **Discrimination Claim**

Wright contends that the district court erred in granting summary judgment for CompUSA regarding disability discrimination

by failing to view the facts in the light most favorable to his claim. To establish disability discrimination under the ADA and Massachusetts law, Wright must show: (1) that he suffers from a disability; (2) that he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and (3) that CompUSA took adverse action against him because of his disability. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)(citing Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999)). The district court held, and we here affirm, that the evidence presented, even viewed in the light most favorable to Wright, is insufficient to create a triable issue of fact as to whether Wright's ADD qualifies as a disability under the ADA.

The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102 (2). Wright alleges that his impairment, ADD, substantially limits him in the major life activities of reading, speaking, concentrating, hearing and processing information, and thinking and articulating thoughts, thus affecting his ability to write, to be spontaneous, to plan, to communicate with others, to run errands, to complete everyday chores, and to deal with stressful situations.

-6-

EEOC regulations define "substantially limits" as "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). Factors to be considered in determining whether an individual is substantially limited in a major life activity are "(i) [t]he nature and severity of the impairment, (ii) [t]he duration or expected duration of the impairment, and (iii) [t]he permanent or long term impact . . . of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Accordingly, this court has refrained from finding a disability pursuant to the ADA absent evidence that the plaintiff "could not perform some usual activity compared with the general population, or that he had a continuing inability to handle stress at all times, rather than only episodically." Calef v. Gillette Co., 322 F.3d 75, 86 (1st Cir. 2003)(employee with attention deficit hyperactivity disorder not disabled under ADA absent showing that substantially limited in the major life activities of learning or speaking).

As the district court found, the evidence Wright provided indicated that his treatment for ADD had been quite successful, and Wright acknowledges that the disruptive severity of his symptoms

-7-

did not begin until Caughman arrived in June 1998. Dr. Song specifically noted in his letter that Wright's stress in the summer of 1998 was due to the changed work environment. So, while Wright presented evidence that Caughman's managerial style created a stressful environment for him that affected his ADD symptoms, he does not present evidence that his ADD generally rendered him unable to perform some usual activity compared to the general population or that he had a continuing inability to handle stressful situations.[1]

Accepting as undisputed that Wright has been diagnosed with ADD,[2] it is not sufficient for an ADA plaintiff "to merely

_____

[1] Wright reminds us that the ADA requires case-by-case determinations in which plaintiffs need only "prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002)(quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)). He contends that the district court applied an inappropriately heightened "objective evidence" standard when it stated that "other than his own affidavit, Mr. Wright presents no objective evidence that his ADD substantially limits a major life activity." Wright v. CompUSA, Inc., No. 01-CV-11567-MEL, slip op. at 6 (D. Mass. Dec. 17, 2002). Despite the reference to Wright's affidavit as the only "objective" evidence, however, it is clear from the opinion that the district court performed the required individualized inquiry of the complete record, including Wright's doctors' letters, and did not improperly limit its consideration to the affidavit.

[2] Wright contends that the district court's reference to his diagnosis as "questionable" shows that it failed to view the facts in the light most favorable to his claim, as required for summary judgment. Wright did not provide further evidence of the diagnosis itself, he explains, because CompUSA conceded for the purposes of its summary judgment motion that Wright had been diagnosed with ADD. While the district court's skeptical attitude toward the

-8-

submit evidence of a medical diagnosis of an impairment." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002). Other circuits have similarly found that ADD does not constitute a disability under the ADA without a showing of substantial limitation of a major life activity. Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1129-31 (10th Cir. 2003)(ADA plaintiff with ADD, bipolar disorder, and hypothyroidism failed to present evidence that her impairments substantially limited any of the major life activities identified); Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499 (7th Cir. 1998)(ADA plaintiff failed to establish that ADD substantially limited her ability to work, speak, or learn). While Wright provided evidence that his ADD affected various activities in his everyday life, this evidence was not sufficient to allow a reasonable juror to conclude that he was substantially limited in the major life activities of reading, speaking, concentrating, hearing and processing information, and thinking and articulating thoughts, as he contends.

## B. Retaliation Claim

Wright asserts that, regardless of the outcome of his discrimination claim, his retaliation claim should survive summary judgment because the record creates a genuine issue of material

---

diagnosis was unwarranted, this does not absolve Wright of his burden of establishing that his ADD substantially limited him in a major life activity.

fact as to whether CompUSA's proffered reasons for discharging Wright were pretextual. We agree.

An ADA plaintiff need not succeed on a disability claim to assert a claim for retaliation. Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997)(citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)); see also Siaca v. Autoridad de Acueductos y Alcantarillados de Puerto Rico, 160 F. Supp. 2d 188, 198 (D.P.R. 2001). Massachusetts's anti-discrimination law also treats retaliation as a "separate and independent cause of action." Abramian v. President & Fellows of Harvard Coll., 731 N.E.2d 1075, 1087 (Mass. 2000). Wright's failure to establish a disability does not preclude his retaliation claim.

The ADA's retaliation provision states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). This court has previously assumed, without deciding, that simply requesting an accommodation, without filing a formal charge or engaging in other specific behaviors listed in § 12203(a), is nonetheless behavior protected from an employer's retaliation. Benoit v. Technical Mfg. Corp., 331 F.3d 166, 177 (1st Cir. 2003)("we shall assume arguendo

-10-

that such behavior on the part of a plaintiff brings him within the ambit of 42 U.S.C. § 12203(a)."); Soileau, 105 F.3d at 16. We have reasoned that "it would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge." Soileau, 105 F.3d at 16. Other circuits have similarly assumed or expressly held that requesting reasonable accommodation is "protected activity" under the ADA. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003)("The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC."); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 706 (4th Cir. 2001); Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1265 (10th Cir. 2001); Silk v. City of Chicago, 194 F.3d 788, 799-801 (7th Cir. 1999). We now hold that requesting an accommodation is protected activity for the purposes of § 12203(a).

To establish a prima facie claim of retaliation, Wright must show "that he was engaged in protected conduct, that he was discharged, and that there was a causal connection between the discharge and the conduct." Soileau, 105 F.3d at 16 (citing Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)). As discussed above, Wright's request for accommodation constituted protected activity, and it is undisputed that he was discharged. The causal connection between his discharge and his request for accommodation

-11-

is the contested issue. The district court found that "the actual causal nexus of events leading to Wright's termination lies in his refusal to attend the mandatory meeting," concluding that "no reasonable juror could find that CompUSA fired Wright in retaliation for his submission of Dr. Song's letter or his other requests." Wright v. CompUSA, Inc., No. 01-CV-11567-MEL, slip op. at 8 (D. Mass. Dec. 17, 2002). In so doing, the district court implicitly discredited Wright's contention that, as opposed to exhibiting insubordination, his behavior on August 11th consisted of good-faith, successful efforts to obtain materials from a meeting that he had already missed while caring for his son. Viewing the record in the light most favorable to Wright, a reasonable juror could infer that CompUSA's charge of insubordination masked retaliatory motives. Wright was terminated immediately after returning from medical leave and requesting accommodation of his ADD. While this chronological proximity does not by itself establish causality, particularly if "[t]he larger picture undercuts any claim of causation," Soileau, 105 F.3d at 16, the record before us does not paint a picture of insubordination sufficient to undercut Wright's claim of causation. When viewed in the light most favorable to Wright, the evidence presented establishes a prima facie case of retaliation sufficient to survive summary judgment.

Once a prima facie case of retaliation is established, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its employment decision." Mesnick, 950 F.2d at 827. If the employer provides a legitimate reason, "the ultimate burden falls on the plaintiff to show that the employer's proffered reason is pretext masking retaliation . . . ." Id. CompUSA alleges that Wright was discharged for insubordination and reminds us that "[t]he ADA is not a license for insubordination at the workplace." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 262 (1st Cir. 2001). The burden thus falls on Wright to show that CompUSA's proffered reason was pretextual. As discussed above, the evidence presented by Wright creates a triable issue of fact as to whether his discharge was in fact due to his allegedly insubordinate behavior on August 11th or whether CompUSA's charge of insubordination masked retaliation for requesting accommodation of his ADD.

### III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment regarding discrimination but reverse and remand Wright's retaliation claim to the district court for further proceedings consistent with this opinion.

**Affirmed in part, reversed and remanded in part**.