**Nerida BAJANA, Plaintiff,**

v.

**John E. POTTER, Postmaster General of the United States Postal Service, Defendant.**

**No. CIV. 04–1472(HL).**

United States District Court, D. Puerto Rico.

Aug. 17, 2005.

Magaly Rodríguez–Quiñonez, Marcos Valls–Sánchez, San Juan, RP, for Plaintiff.

Lisa E. Bhatia–Gautier, AUSA, San Juan, PR, for Defendant.

## REPORT AND RECOMMENDATION

VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

On May 19, 2004, plaintiff Nérida Bajana (hereinafter "Ms. Bajana") filed this federal complaint based on employment discrimination and a hostile work environment under Title VII of the Civil Rights Act of 1964 against the United States Postmaster General John E. Potter (hereinafter "Potter") because of national origin. Ms. Bajana claims that, while she was a United States Postal Service ("USPS")

employee at Isabela, Puerto Rico, she was subject to disparate treatment for being Ecuadorian. In addition, Ms. Bajana avers she was subject to retaliation for her activities against Supervisor Widden Juarbe ("Mr.Juarbe") and Postmaster Félix Matias ("Mr.Matias") before the Equal Employment Opportunity Commission ("EEOC"). Title 42, *United States Code*, 2000(e) *et seq.*; Civil Rights Act of 1995. (Docket No. 1, ¶¶ 1–20).

On May 3, 2005, defendant Potter filed a motion for summary judgment as to plaintiff's federal lawsuit on grounds Ms. Bajana failed to set forth a cause of action of hostile work environment discrimination due to national origin and, as such, failed to state a claim upon which relief can be granted (Docket No. 20). In essence, defendant submits plaintiff failed to set forth a *prima facie* case of discrimination based on national origin, which would trigger a violation of Title VII, because she admits the work relationship with her co-workers was poor and based on personal animosity. Defendant also contends these co-workers' actions were not so severe or pervasive to amount to harassment because of hostile work environment. Finally, defendant briefly addresses plaintiff's retaliation claim by arguing plaintiff's supervisor did not treat her differently based on her national origin or retaliated against her.

On July 22, 2005, plaintiff filed an Opposition to the Motion for Summary Judgment along with a Memorandum of Law in support thereof and a Statement of Material Facts arguing she has complied with all the requirements of a prima facie case of discrimination and that there are issues of fact which preclude summary judgment. (Docket Nos. 28, 29 and 31). Thereafter, plaintiff submitted the required translations into the English language of several documents. (Docket No. 37).

On June 28, 2005, the Court referred defendant's summary judgment request and related pleadings to this Magistrate Judge for report and recommendation (Docket No. 25).

## FACTUAL BACKGROUND

Ms. Bajana is of Ecuadorian origin and was a regular USPS employee at the Isabela Post Office since 1995. At the relevant time, Ms. Bajana was working as a Distribution Window Clerk, receiving performance related monetary awards in 1999. While working therein, she had a personal relationship with a co-worker Mr. Badillo which lasted for approximately one (1) year and ended by April of 2001. (Docket No. 1, Complaint ¶ 5; Exhibit 5, plaintiffs' depo. of 10–31–2003). By the summer of 2001, co-worker Melissa Morán ("Ms.Morán"), of Puerto Rican origin, started to work at the Isabela Station, as a part-time, flexible employee, and initiated a personal relationship with Mr. Badillo, plaintiff's former boyfriend. Plaintiff submits they both began a pattern of harassment, hostility and discrimination against her. Ms. Morán additionally made derogatory comments in relation to plaintiff's national origin. Docket No. 1, Complaint ¶¶ 5–6; plaintiff's depo. *Id.*

On October 25, 2001, plaintiff sought pre-complaint counseling from the EEOC and mediation efforts were held on January 31, 2002, between the concerned parties and with Mr. Matias, Isabela's Postmaster. From November 1, 2001 to January 2, 2002, plaintiff did not work at the Isabela Post Office. Docket No. 1, Complaint ¶¶ 10, 12; Docket No. 28, plaintiff's statement material facts ¶¶ 18–20; plaintiff's depo, pp. 66–68. No punitive nor remedial acts as to employment had been taken by Postmaster Matias up to that time. Plaintiff avers that, after the mediation process and upon acquiring knowledge of her EEOC activities, pervasive retaliation ensued by Mr. Matias in that: she was not allowed to use the telephone, the photocopier or the air conditioner; he failed to take action as to intimidation or derogatory comments from co-workers against plaintiff based on her nationality; issued a one-day emergency suspension on February 19, 2002, and a second emergency suspension on February 27, 2002, in addition to a letter of removal on March 1, 2002, against plaintiff that was thereafter rescinded. These retaliatory acts were taken by Postmaster Matias within a thirty (30) day period after mediation and EEOC activities.[1] Docket No. 28, Plaintiff's statement of material facts ¶¶ 25, 27, 30, 31; plaintiff's depo pp. 152–153.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir., 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some

---

1. Plaintiff had been issued a letter of warning on October 17, 2001, by supervisor Widden Juarbe, after a verbal altercation with Ms. Moran (Exhibit D), which derogatory word exchange did not address national origin.

material fact." *Cortés–Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodríquez,* 23 F.3d 576, 581 (1st Cir., 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir., 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir., 1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir., 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1555 (S.D.Fla.1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## LEGAL ANALYSIS

### A. Plaintiff's claim of hostile work environment because of national origin.

Defendant Potter submits summary judgment is warranted as to plaintiff's claim of discrimination because plaintiff has failed to establish a case of national origin harassment and any derogatory comments or hostile work environment were due to the employee's poor personal relationships for reasons other than discrimination. Plaintiff in turn claims she has presented a prima facie case of discrimination and was subject to a hostile work environment.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2.

A hostile work environment violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and quotation marks omitted); *Kosereis v. Rhode Island,* 331 F.3d 207, 216 (1st Cir.2003). Though there is no "mathematically precise test" to determine whether plaintiff presented sufficient evidence that she was subjected to a hostile work environment, *Harris,* 510 U.S. at 21, 114 S.Ct. 367; *Kosereis,* 331 F.3d at 216, the pattern of conduct complained of must be "(1) characterized by intimidation, ridicule and insult, not just minor unpleasantness or criticism, (2) offensive to the complainant precisely because of his or her membership in a protected class, and (3) sufficiently burdensome to materially alter the conditions of the complainant's employment." *White v. N.H. Dep't of Corr.,* 221 F.3d 254, 259–60 (1st Cir.2000). We look to all of the circumstances, including the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with plaintiff's work performance. See *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Che v. Mass. Bay Trans. Auth.,* 342 F.3d 31, 40 (1st Cir.2003); *Kosereis,* 331 F.3d at 216; *Gorski v. N.H. Dep't of Corr.,* 290 F.3d 466, 472 (1st Cir.2002); *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1st Cir.2001). Courts are supposed to use "[c]ommon sense, and an appropriate sensitivity to social context," to distinguish between innocuous behavior and severely hostile or abusive conduct. *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Kosereis,* 331 F.3d at 216.

In relation to this claim, there is no genuine controversy as to the following facts:

Plaintiff has been a regular USPS employee, a United States citizen, and national of Ecuador, South American (Hispanic). All employees at the Isabela Postal Office are of Puerto Rican origin (Hispanics), that is, their national origin was other than Ecuador or South America. Plaintiff's depo., pp. 14–15, Exhibit 1; Docket No. 20, defendant's statement of undisputed facts ¶ 3.

Mr. Matias has been the Postmaster of the Isabela Station for at least four (4) years. Docket No. 20, defendant's Exhibit B; plaintiff's depo., p. 30.

Plaintiff received two (2) monetary awards in employment for the year 1999; Mr. Juarbe, Ms. Bajana's immediate supervisor, awarded her a $500 and a $700 performance awards. Plaintiff has been awarded, due to her performance, letters of recognition and cash awards twice by Mr. Matias. Docket No. 20, Exhibit B (Mr. Juarbe's statement under penalty of perjury EEO Investigative affidavit dated July 26, 2002); plaintiff's depo., pp. 33–34.

Ms. Bajana initiated a relationship with co-worker Mr. Badillo in April 2000 and concluded same by May 15, 2001; the problems at work started when plaintiff's relationship with Mr. Badillo concluded. Plaintiff's depo., p. 13.

Plaintiff's claims of hostile work environment originated after she terminated the relationship with Mr. Badillo. Plaintiff's depo., p. 44.

Mr. Badillo's hostile behavior towards plaintiff, not attributed to any national origin remark, could be motivated because he was hurt after plaintiff left him and went back to live with her children's father. Plaintiff's depo., pp. 82–83 and 90–91.

Ms. Morán began working as an employee in Isabela Postal Station in July 2001 as a part-time, flexible employee. Afterwards, she initiated a relationship with Mr.

Badillo. Docket No. 28, plaintiff's Statement Material Facts ¶ 5.

Ms. Moran's hostile behavior towards plaintiff could be motivated by not being prepared to work with the ex-girlfriend of her boyfriend. Plaintiff's depo., p. 54; Docket No. 20. defendant's uncontested facts ¶ 7.

Mr. Badillo was using Ms. Morán to attack plaintiff because he was angry when plaintiff broke off the relationship. Plaintiff's depo., pp. 82–83; defendant's uncontested facts id.

On October 17, 2001, Mr. Juarbe issued a reprimand letter to plaintiff for derogatory comments made by plaintiff to Ms. Morán, such as "cara de yegua" "panty floja" and other insulting words, while they both worked at the Isabela Postal Station. Plaintiff's depo., p. 50; acceptance of the letter of October 17, 2001, depo. p. 52; Docket No. 20, Exhibit D.

Mr. Juarbe issued a memo to all employees of the Isabela Post Office dated October 17, 2001 reminding employees of appropriate workplace behavior. Plaintiff's depo., pp. 52–54; Docket No. 20, Exhibit E; Declaration of Mitchell Sturman, Manager, Equal Employment Opportunity Compliance and Appeals ¶ 7.

Co-worker Diana Borges' ("Ms.Borges") comment of February of 2002 of "these Ecuadorians" was perceived by plaintiff as a derogatory comment due to national origin. Docket No. 1, Complaint ¶ 15; plaintiff's depo., p. 98.

Ms. Borges' problems with plaintiff were personal and initiated in 2000 upon plaintiff withdrawing her offer of having Ms. Borges' close family become godparents to her child. Plaintiff's depo. id.;

On October 23, 2001, plaintiff submitted a memo requesting a transfer from the Isabela Post Office to Aguadilla. Plaintiff's depo., p. 63; Docket No. 20, Exhibit 5.

Upon plaintiff's return to Isabela Post Office from Aguadilla in January 2002, Ms. Moran's behavior towards plaintiff continued. Docket No. 1, Complaint ¶ 12.

Mr. Mitchell Sturman, Manager of EEOC Compliance and Appeals of the USPS, makes reference to the fact plaintiff's supervisors made attempts to diffuse the animosity between plaintiff and co-workers at the Isabela Postal Station. Docket No. 20, Exhibit F; Docket No. 1, Complaint ¶ 10; Felix Matias' affidavit of July 26, 2002 before the EEO Investigative Unit; Mr. Widden Juarbe statement of July 26, 2002.

Plaintiff's verbal arguments with Ms. Morán were properly depicted in the personnel memo issued in Mr. Juarbe's warning letter to plaintiff of October 17, 2001, stating plaintiff uttered insulting words by calling Ms. Moran "cara de yegua" and "panty floja". Docket No. 20, Exhibit D; plaintiff's depo., pp. 51–52.

On March 15, 2002, employees of the Isabela Postal Station signed a letter/statement to management in reference to the animosity between plaintiff and others adversely affecting normal work function and seeking from management to avoid future problems and confrontations by which time plaintiff's letter of removal had already been issued on March 1, 2002; Plaintiff's Exhibit 20; Docket No. 20, Exhibits H and F.

Plaintiff would first need to establish a pervasive and severe hostile work environment which effected her conditions of employment. In the *McDonnell Douglas*[2]

**2.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

framework, plaintiff solely needs to meet the low standard of showing a *prima facie* case of discrimination. Once this framework drops out of the picture, the ultimate burden is on the employee to persuade the trier of fact that the employee was treated differently because of national origin.

Plaintiff's own evidence indicates she perceived the hostilities of co-workers as personal, stemming from ill-gotten personal affairs. She has also submitted co-workers' derogatory remarks addressed her nationality for which she complained to management as to a perceived national origin discrimination. The hostile work environment caused plaintiff to seek temporary transfer out of Isabela Postal Station and to an extended leave of absence because of a mental condition for which she underwent psychological treatment. Upon her return to the Isabela Post Office on or around January of 2002, the hostilities continued. Plaintiff sought pre-counseling for EEOC claims and it was thereafter when management detrimental actions against plaintiff initiated and provided grounds for a separate claim of retaliation.

Plaintiff's First and Second causes of action against defendant Potter are predicated on failure to take remedial action as to what was subjectively perceived as a hostile work environment because of national origin. (Docket No. 1, First and Second Cause of Action). As such, plaintiff needs to forward evidence that could establish her employer failed to address her claims to take remedial action and/or treated her differently because of her national origin, that is, the employer's reasons for failing to take action to remedy plaintiff's situation was rooted on a discriminatory animus. *Zapata–Matos v. Reckitt & Coleman, Inc.*, 277 F.3d 40 (1st Cir.2002).

In light of above uncontroverted issues, there is no genuine issue in controversy that plaintiff's claims of derogatory remarks . because of national origin were enunciated by co-workers and non-supervisory individuals on account of personal animosities which escalated to innuendos, acts, and ill blood feud between co-workers at the Isabela Postal Station.

On October 17, 2001, a letter of warning was issued upon plaintiff being involved in a verbal argument with a fellow employee, Ms. Morán. Plaintiff's deposition testimony acknowledged the incident occurred and her behavior, although considered provoked, should not have taken place. Plaintiff's depo., pp. 51–52. The employer, through Mr. Juarbe, thereafter issued a memorandum reminding all employees of appropriate workplace behavior. Docket No. 20, Exhibit E. These are the only actions attributable to the employer, not grounded on plaintiff's subsequent claim of retaliation. Plaintiff's remaining claims against the employer based on discrimination are for his failure to act on her complaints as to hostile work environment by co-workers. No evidence whatsoever has been prompted that such failure to act was due to the employer's discriminatory animus.

Moreover, plaintiff's proffered facts, even if true, are insufficient to support her claim of hostile work environment. The statements she complains about do not reach the level of offense required by *Harris*, 510 U.S. at 17, 114 S.Ct. 367.

Thus, there is no evidence to demonstrate her workplace was "permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 78, 118 S.Ct.

998, 140 L.Ed.2d 201 (1998). Moreover, "simple teasing, offhand comments, and isolated incidents" (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world. *Suárez v. Pueblo Intern., Inc.,* 229 F.3d 49, 54 (1st Cir.2000).

Thus, having examined the summary judgment request, its opposition, and all attachments thereof, plaintiff has submitted no factual dispute as to necessary elements required for a cause of action that her employer's failed to act on her complaints because of national origin discrimination.

In view of the foregoing, it is recommended defendant's request for summary disposition of plaintiff's claim of employment discrimination and hostile work environment under Title VII because of national origin be **GRANTED**.

**B. Plaintiff's claim of retaliation by Postmaster Matias for her EEO activities.**

Plaintiff avers her employer initiated reprisals and retaliatory actions in detriment of her work upon becoming knowledgeable of her EEOC activities, that Mr. Matias was angry and Mr. Juarbe did not talk to plaintiff after they became aware of this EEOC proceeding. In turn, defendant Potter claims plaintiff was not subject to retaliation.

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice ... or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3.

■ Like other discrimination claims, in the absence of direct evidence, a plaintiff must first make a prima facie claim of retaliation. To present a prima facie case of retaliation, a plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal nexus between the protected activity and the firing. *Bishop v. Bell Atl. Corp.,* 299 F.3d 53, 58 (1st Cir.2002); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 262 (1st Cir.1999); *Hernández–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998). Once plaintiff makes her prima facie showing, the burden shifts to defendant Potter to articulate legitimate, non-retaliatory reasons for his employment decisions. See *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996). If defendant Potter does so, the ultimate burden falls on plaintiff to show that the proffered legitimate reason is pretextual and that the adverse employment action resulted from the defendant Potter's retaliatory animus. *Fennell,* 83 F.3d at 535 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

During the short period of time after becoming aware of plaintiff's EEOC actions, the following events transpired which are not in controversy:

On January 31, 2002, mediation process attempting to solve the situation was held between plaintiff, Mr. Juarbe, Mr. Matias, and a Union representative.

On February 19, 2002, Matias issued a Notice of Emergency Suspension to Ms. Bajana for the alleged violation of Section

666.53 and Section 66.2 of the Employee Labor Manual. Docket No. 28, plaintiff's statement material fact ¶ 27.

Postmaster Matias issued the Letter of Warning of February 22, 2002 to Ms. Morán. Docket No. 20, Exhibit G.

On February 27, 2002, Matias issued a second Notice of Emergency Suspension to Ms. Bajana because there was pending an internal investigation. From that date until April, Ms. Bajana stayed home unable to work. Docket No. 28, plaintiff's statement material fact ¶ 30.

Plaintiff notified to Mr. Matias, by a handwritten letter, events at the work site as to which no action seems to have been undertaken and which are dated after the mediation process took place. Docket No. 28 and 31, plaintiff's Exhibits 11 and 12; plaintiff's depo., pp. 96, 105, 109.

Postmaster Matias issued the Letter of Removal of March 1, 2002 to plaintiff Bajana. Docket No. 20, Exhibit F.

Plaintiff submitted by letter to EEOC Compliance and Appeals Manager, Mitch Sturman, an amended complaint and included letter of removal. Docket No. 28, plaintiff's statement material fact ¶ 34.

On March 22, 2002, Postmaster Matias notified to plaintiff the letter of removal dated March 1, 2002 was rescinded. Docket No. 28, plaintiff's statement material fact ¶ 35.

Plaintiff was paid in excess of four hundred (400) hours of work and received back pay of approximately $7,685.77. Docket No. 1, Complaint ¶ 19.

Plaintiff's personnel record was thereafter expunged as to all reprimands. Docket N. 20, Exhibit B, EEO Investigative Affidavit of Mr. Felix Matias dated July 26, 2002.

Ms. Morán was thereafter transferred to the Moca Postal Station. Docket No. 28, plaintiff's statement material fact ¶ 40.

Plaintiff additionally states that shortly after mediation on her EEO complaint, Postmaster Matias performed other acts which are considered retaliatory, including not allowing her to use the telephone, the copy machine and the air conditioner in her working area. Plaintiff's depo. pp. 152–153.

In turn, defendant avers in his summary judgment request there is no evidence on the record the actions taken by management against plaintiff, including the Letter of Warning nor the Letter of Removal, were based on retaliation for protected activity or plaintiff's national origin and defendant has set forth legitimate non-discriminatory reasons for its actions. In relation to the Letter of Warning, defendant claims the same was made in response to plaintiff having called Ms. Morán "cara de yegua" and "panty floja". As to the Letter of Removal, defendant contends that on February 5 and 27, 2002, plaintiff was disrespectful to Mr. Matias by not following his instructions. Furthermore, defendant avers plaintiff created a hostile work environment by taking inappropriate actions against Mr. Borges and Ms. Morán. These actions from plaintiff prompted her co-workers to issue a statement to management asserting plaintiff was seeking confrontation with her co-workers and was being insubordinate. Docket No. 20.

Defendant Potter does not dispute the first two (2) elements of plaintiff's prima facie case. The record indicates plaintiff engaged in a protected activity, and was subsequently removed, even though the removal was later rescinded, and was subject to other alleged adverse employment actions as mentioned above. Thus, we focus on the third element to determine whether there was a causal nexus between

plaintiff's EEOC complaint and the alleged adverse employment actions.

Plaintiff mainly relies upon the temporal proximity between her EEOC complaint and the actions taken against her to establish the causal nexus necessary for the third prong. Docket No. 28.

The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient to establish a prima facie case uniformly require that the temporal proximity be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); see also *Bishop v. Bell Atlantic Corporation*, 299 F.3d 53, 60 (1st Cir.2002) (finding thirty-month period insufficient).

The actions against plaintiff were allegedly taken within thirty (30) days upon becoming knowledgeable of her EEOC activities. This satisfies the "very close" requirement. See *Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 25–26 (1st Cir.2004) (finding that a one-month interval between the protected conduct and the adverse employment action provides sufficient temporal proximity to establish a prima facie case). See *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir.2003) (holding that temporal proximity alone, despite employer's proffer of a legitimate excuse, was sufficient to establish a prima facie case).[3]

The timing of the Letter of Warning, the Letter of Removal and the two (2) Notices of Emergency Suspension following shortly plaintiff's activities before the EEOC, could raise an inference these actions were done in retaliation for plaintiff' exercising her rights. The proximity in time between the protected activity and the alleged retaliation is circumstantial evidence of motive. *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 980 (9th Cir. 2002); *Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir.2002); *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 57 (1st Cir.2003). Moreover, when harassment follows hard on the heels of protected activity, the timing often is strongly suggestive of retaliation. *Noviello v. City of Boston*, 398 F.3d 76, 86 (1st Cir.2005); *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir.1988); *Mole v. Univ. of Mass.*, 442 Mass. 582, 814 N.E.2d 329, 341 (2004).

In addition to the Letter of Warning, the Letter of Removal and the two (2) Notices of Emergency Suspension, plaintiff claims that, shortly after mediation on her EEO complaint, Postmaster Matias performed other acts including not allowing her to use the telephone, the copy machine or the air conditioning. It is not clear from the record whether these actions in particular affected plaintiff's working conditions; the exact dates on which these actions allegedly took place; and the num-

---

**3.** We note that some Circuits have ruled that timing, standing alone, will not create a genuine issue of material fact regarding causation in a retaliation case. *Johnson v. University of Wis.-Eau Claire*, 70 F.3d 469, 480–81 (7th Cir.1995); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir.1999) (same).Timing evidence is rarely sufficient in and of itself to create a jury issue on causation. Indeed, in the analogous Title VII context, we have held that timing, "standing alone, does not create a genuine issue as to casual connection." *Foster v. Arthur Ander-sen*, 168 F.3d 1029, 1034 (7th Cir.1999). Other evidence of retaliation, whether significant or modest, could make the timing evidence stronger and provide a plaintiff with a basis to argue that a reasonable jury could find in his favor. *Hudson v. Wal–Mart Stores, Inc.*, 412 F.3d 781, 787 (7th Cir.2005). See *Harvey v. Stringer*, 113 Fed.Appx. 629, 630 (5th Cir. 2004) (timing alone did not create genuine issue of material fact in a retaliation claim when the defendant provided legitimate reasons for the adverse employment action).

ber of times these actions took place. Nonetheless, these acts could be considered retaliatory due to the proximity to the filing of the EEO claim as proffered by plaintiff.

Therefore, we find that Plaintiff has established a prima facie case of retaliation.

■ As plaintiff has established a prima facie case, the burden shifts to defendant Potter to articulate a non-discriminatory reason for the adverse employment action. See *Fennell*, 83 F.3d at 535. We note that, even though defendant has proffered legitimate non-discriminatory reasons for the Letter of Warning and the Letter of Removal, he has not proffered a legitimate non-discriminatory reason for the other actions above mentioned including the two (2) Notices of Emergency Suspension, not allowing plaintiff to use the telephone, the copy machine and the air conditioning. In addition, defendant Potter has not proffered a legitimate non-discriminatory reason for Mr. Matias not taking action against co-workers Mr. Borges and Ms. Morán's alleged intimidation and comments against plaintiff's nationality. Thus, defendant Potter has not met his burden.

Accordingly, viewing the totality of the evidence on this issue and drawing all inferences in favor of plaintiff, under the standards set forth for summary judgment, the Court finds the evidence presented by the parties as to retaliation is sufficient to make out a jury question as to pretext and discriminatory animus. See *Wright*, 352 F.3d at 478. Again, we focus on the temporal proximity between the EEOC filing and the alleged actions taken against plaintiff. The thirty day period is so proximate and provocative that, based upon that fact alone, a reasonable factfinder could determine that defendant Potter's stated reason was pretextual. *Id.*

The First Circuit has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, as proof is generally predicated on inferences, rather than direct evidence. *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 34 (1st Cir.1990) (quoting *Rossy v. Roche Prod. Inc.*, 880 F.2d 621, 624 (1st Cir. 1989)). The parties' evidence involves issues of "motive" and/or "intent" which must be evaluated by a jury, because "summary judgment procedures should be used sparingly ... where motive and intent play leading roles." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). See also *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988); *Pullman–Standard v. Swint*, 456 U.S. 273, 287–288, 102 S.Ct. 1781, 1789–1790, 72 L.Ed.2d 66 (1982). (At the very least there is an issue of the "intent" or "motive" as to the transfer of Plaintiff—was the purpose legitimate under a valid business reasons or was the motive one of retaliation and thus, illegal).

Accordingly, it is recommended defendant's request for summary judgment of plaintiff's claims for retaliation **BE DE-NIED**.

## CONCLUSION

In view of the foregoing, it is recommended that defendant Potter's Motion for Summary Judgment be GRANTED in part and DENIED in part. Accordingly, it is recommended that defendant's request for summary disposition of plaintiff's claim of employment discrimination and hostile work environment under Title VII because of national origin be **GRANTED** and defendant's request for summary judgment of plaintiff's claims for retaliation **BE DENIED**.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").