Lenin **SEPULVEDA,** Plaintiff

v.

Dan **GLICKMAN,** Secretary, U.S. Department of Agriculture Defendant

No. CIV. 99–1447(SEC).

United States District Court, D. Puerto Rico.

Sept. 28, 2001.

187

Jorge L. Arroyo–Alejandro and Jose F. Sarraga–Venegas, San Juan, PR, for Plaintiff.

Lilliam E. Mendoza–Toro, Hato Rey, PR, for Defendant.

**OPINION AND ORDER**

CASELLAS, District Judge.

Pending before the Court is Defendant's motion for summary judgment, (Docket # 23), and the opposition thereof. (Docket # 26). For the reasons stated below, Defendant's motion for summary judgment is **GRANTED in part and DENIED in part.**

## I.  Background

Plaintiff Lenin Sepulveda ("Sepulveda") filed this case on April 26, 1999, for facts occurring between 1995–97, which purportedly create a cause of action under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701–9 *et. seq.*  Plaintiff worked at all times relevant to the complaint at the United States Department of Agriculture, ("USDA"), holding the position of Rural Development Community Manager.  He claims that between 1995–97 he was threatened with discharge through a reduction in force ("RIF") by his immediate supervisor Andrés Irizarry, and by Ileana Echegoyen, then State Director of USDA Rural Development in Puerto Rico.  Plaintiff also alleges that Andrés Irizarry specifically discriminated against him because of his age and diabetic condition, making pejorative remarks about him in front of other co-workers.  In addition, Sepulveda alleges that Mr. Irizarry made attempts to transfer him from his assigned work area, Yauco, to USDA offices located elsewhere, which were scheduled for closing.

Defendant argued in his motion for summary judgment: (1) that Plaintiff has failed to establish a *prima facie* case under the Rehabilitation Act because his diabetes does not constitute a disability within the meaning of the Act; and (2) that Plaintiff has also failed to establish a *prima facie* case of age discrimination under ADEA because no adverse action has been taken against him, and he has not been substituted in his position by someone outside the protected age group.

Plaintiff's opposition to Defendant's motion alleges that there are material facts in controversy which preclude the entry of summary judgment.  Particularly, Plaintiff points out to the following: (1) that he has Diabetes Mellitus Type II and a renal insufficiency which requires him to make frequent visits to the bathroom; (2) that on one occasion his supervisor Mr. Andrés Irizarry, instructed him to personally attend to and service every person in the waiting room and that as a result of that, he was unable to have lunch that day, which triggered a diabetic reaction to lack of regular food intake, (Docket # 26, Ex. C, pp. 136–7); (3) also, that he endured pejorative remarks from Andrés Irizarry, such as:

- "I have said that apparently he works [in] the restrooms."  (Docket # 26, Ex. E, pp. 159–160).

- "You (Sepulveda) are a member of the little group of Mendoza's diabetics." (*Id.* p. 163).

- Irizarry also suggested that Plaintiff was at a medical appointment for a gynecological procedure when he commented to other employees: "Oh yes, I understand that Lenin has some scrapes pending." (Docket # 26, Ex. C, p. 185).

- Irizarry also ridiculed Plaintiff by asking if he is "pregnant." (*Id.* at p. 186).

As far as disparate treatment and adverse employment actions, Plaintiff points out to the following facts:

- Plaintiff was excluded from a cash award granted to all other personnel regularly in the Yauco office, which Plaintiff managed. (Docket # 26, Ex. C., p. 175–6).

- Plaintiff received an "Opportunity to Improve" letter informing an adverse performance evaluation, when no letter was sent to Yauco's previous manager who had a similar long-standing serious loan delinquency problem. (Docket # 26, Ex. G., p. 8).

- Plaintiff was precluded from posting a sign with the office hours available for the general public. (Docket # 26, Ex. E, pp. 174–77, Ex. C, p. 180).

- Defendants impeded Plaintiff from working in the San Germán District Office with Andrés Irizarry. Plaintiff's request would have constituted a career enhancing assignment because "at the District level, he will deal with other county offices in acting capacity when the RDM [Rural District Manager] is absent and he will deal with more complex projects with these entities." (Docket # 26, Ex. E, p. 75–6).

- Defendant allegedly attempted to disguise the discrimination as justified by Sepulveda's inability to recondition the habitual and highly problematic Yauco office in his first few weeks aboard. (Docket # 26, Ex. C, p. 59–60).

- As expressed by Plaintiff in his deposition, his supervisor Mr. Irizarry, specifically told him to refrain from answering or refuting the disciplinary letters sent to him. (*Id.* at p. 59).

- Allegedly, the Defendant fictitiously decreased the loan delinquency rate in the Yauco office when two persons came in from other offices to help, in order to make Sepulveda appear incompetent. He purportedly accomplished this by allowing a detailed official to reamortize delinquent loans in order to make them appear as current, all without strict adherence to the administrative procedures. (Docket # 26, Ex. C pp. 164–8).

- Allegedly, Mr. Irizarry excluded Plaintiff from participating in a commission to revise job descriptions because he preferred a younger employee, and he also eliminated Plaintiff as a candidate for another position in the Caguas office because Sepulveda "was an older fellow." (*Id.* at 185–6).

- Irizarry scornfully and in a mocking manner said to a group of employees in Plaintiff's presence, that he would request Plaintiff's "Medicare card," implying that Sepulveda was old. (*Id.* at 185–6, and 8–9).

- Mr. Irizarry expressed to another employee that he wanted Sepulveda out of Yauco, Juana Diaz, and the agency. (Docket # 26, Ex. J p. 3 ¶ 7).

- As a result of all these incidents, Plaintiff is currently suffering from "Major Depression single in partial remission." (Docket # 26, Ex. K).

## II. Legal Analysis

### A. Summary Judgment Standard

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evi-

dence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *See also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

## B. American With Disabilities Act

Defendant cites the Supreme Court case of *Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), for the proposition that Plaintiff's diabetes does not constitute a disability under ADA, if mitigating and corrective measures are taken into account. Indeed, *Sutton* held that in order to make a determination of whether or not a particular person is disabled under the ADA, it is necessary to make an individual assessment of that person's impairment, 119 S.Ct. at 2147, giving due consideration to the effect on the individual of any corrective or mitigating measures taken. *Id.* at 2149. In particular, Defendant quotes the following paragraph from *Sutton*:

Under [the EEOC approach, which defined a disability without regard to corrective or mitigating measures], courts would almost certainly find all diabetics to be disabled, because if they failed to monitor their blood sugar levels and administer insulin, they would almost certainly be substantially limited in one or more major life activities. A diabetic whose illness does not impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes. Thus, the [EEOC] guidelines approach would create a system in which persons often must be treated as members of a group of people with similar impairments, rather than as individuals. This is contrary to both the letter and the spirit of the ADA.

*Id.* at 2139.

In the aftermath of *Sutton*, several courts have had the opportunity to rule on the issue of when and under what conditions diabetes can be considered a disability for ADA purposes. By all accounts, it is a matter of degree. In partic-

ular, a plaintiff must demonstrate that his diabetes, taking into account any treatment required, substantially limits one or more of his major life activities. *See Sutton,* 119 S.Ct. at 2150 ("The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.' "); *see also Lawson v. CSX Transportation Incorporated,* 245 F.3d 916, 923–5 (7th Cir.2001) (finding that plaintiff's diabetes substantially restricted the major life activity of 'eating' when it imposed 'severe' restrictions on his ability to eat); *E.E.O.C. v. Sears, Roebuck & Co.,* 233 F.3d 432, 438 (7th Cir.2000) (holding that there was a material issue of fact in controversy precluding the entry of summary judgment, when plaintiff had produced enough evidence to show that her neuropathy might be so severe as to substantially limit her ability to walk); *Gray v. Sears, Roebuck & Co., Inc.,* 131 F.Supp.2d 895, 902 (S.D.Tex.2001) (finding that plaintiff's diabetes did not amount to a disability under ADA because "[he did] not produce[ ] any evidence that his diabetes substantially limited one or more of his major life activities.... [His] only evidence ... is that he has to take additional medicine for his diabetic condition and that he has to avoid strenuous activity, although he can walk."); *Williamson v. International Paper Company,* 85 F.Supp.2d 1184, 1192 (S.D.Ala.2000) (finding that plaintiff's diabetes and neuropathy did not constitute a disability when the only limitations he suffered were the requirement of using a "soft mat and jogging shoes and avoidance of extreme heat and moisture" and his difficulties were "intermittent and mild during his employment with defendant."). This is fact-intensive and individualized inquiry, where plaintiff bears the burden of proof. *Schaefer v. State Ins. Fund,* 207 F.3d 139, 143 (2nd Cir.2000) ("Whether a given impairment constitutes a disability once ameliorative measures are considered is an individualized, fact-specific inquiry.")

■ In the case at bar, Plaintiff has been unable to satisfy this standard. He has only come forward on his opposition to summary judgment with proof that his diabetes "requires medication, a fixed meal schedule, timely snack breaks, and the opportunity to use the bathroom very frequently during the work day." Under these conditions, and taking into account the availability of corrective and mitigating measures, Plaintiff's diabetes does not constitute a substantial limitation to any major life activity. *See Williamson v. Int'l Paper Co.,* 85 F.Supp.2d at 1192 (granting employer's motion for summary judgment when plaintiff could only prove that his difficulties were "intermittent and mild during his employment with defendant.... [and][he] testified that, other than having to take frequent breaks and eat every two hours, his diabetes did not interfere with his job performance."); *Nawrot v. CPC International,* 2000 WL 816787, *6 (N.D.Ill.2000) (granting summary judgment motion for defendant when plaintiff failed to show that his diabetes, under treatment, substantially limited any major life activity. The court noted that plaintiff's only hypoglycemic reactions occurred when he failed to "successfully maintain his blood sugar level by administering insulin, eating snacks, and/or ceasing work activity. In other words, these reactions occurred in the absence of corrective measures. Even if Nawrot occasionally suffers from hypoglycemia despite his best efforts at mitigation, there is no suggestion that these infrequent and limited episodes substantially limit him from working, not only at Bestfoods, but in a broad category of jobs.").

■ In addition, Plaintiff fails to show which, if any, of his major life activities are

substantially limited by his diabetes. This is a crucial and necessary showing that plaintiff must make in order to establish an ADA claim, and one where he has not satisfied his burden. *Bragdon v. Abbott,* 524 U.S. 624, 637, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1st Cir.1998) (stating that "[t]he statute is not operative, and the definition [of disability] not satisfied, unless the impairment affects a major life activity."). Accordingly, the Court finds that there is no trial-worthy issue regarding Plaintiff's impairment and that he has failed to demonstrate that he is disabled within the meaning of the ADA.

## C. Rehabilitation Act

■ Section 504(a) of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability ... be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The definition of disability by the statute is identical to the one provided by the ADA. *Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 542 (1st Cir.1999) (comparing 42 U.S.C. § 12102(2)(statutory definition of ADA's "disability") and 29 C.F.R. § 1630.2(g) (regulatory definition of ADA's "disability") with 29 U.S.C. § 705(20) (statutory definition of Rehabilitation Act's "individual with a disability") and 29 C.F.R. § 1614.203(a)(1) (regulatory definition of Rehabilitation Act's "individual with handicaps")). In addition, Congress has specifically provided that:

> [t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standard applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 *et. seq.*) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities

Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794. Therefore, this Court's finding that Plaintiff failed to satisfy her burden of showing a "disability" under the ADA mandates a dismissal of the Rehabilitation Act claim for the same reasons.

## D. Age Discrimination in Employment Act

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The First Circuit has established that plaintiffs in ADEA discrimination lawsuits "bear the ultimate burden of proving that their ages were the determinative factor in their discharge, 'that is that [they] would not have been fired but for [their] age.'" *Pages–Cahue v. Iberia Lineas Aereas de España,* 82 F.3d 533, 536 (1st Cir.1996), *quoting LeBlanc v. Great American Insurance,* 6 F.3d 836, 841 (1st Cir.1993).

In some cases, the plaintiff will have enough direct or "smoking gun" evidence to establish discrimination without more. Most likely, however, the plaintiff will possess little overt evidence of discrimination, and will have to rely on the much utilized burden-shifting standard enunciated in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *Pages–Cahue,* 82 F.3d at 536. *See also Serrano–Cruz v. DFI Puerto Rico,* 109 F.3d 23 (1st Cir.1997).

■ Under the standard first set forth in *McDonnell Douglas,* and later adapted to cases filed under the ADEA, plaintiff may establish a *prima facie* case by show-

ing "(1) that he or she fell within the ADEA's protected age group—that is, more than forty years of age; (2) that he or she met [the employer's] legitimate performance expectations; (3) that he or she experienced [an] adverse employment action; and (4) that [the employer] did not treat age neutrally or retained younger persons in the same position." *Pages–Cahue*, 82 F.3d at 536.

■ The statute is broad in terms of the conduct which it prohibits. It is not limited to proscribing discriminatory discharge, rather it includes discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a). "Courts have uniformly read this language to require a plaintiff ... to establish, as part of his *prima facie* case, that he suffered so-called 'adverse employment action.' " *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir.2001). Although this concept has not been explicitly defined, it is not without bounds and it has a limited content. *Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 49 (1st Cir.1999). "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Id.* (quoting *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir.1996)). This inquiry "must be cast in objective terms. Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not

elevate that act or omission to the level of a materially adverse employment action." *Id.* at 50 (quoting *Blackie, supra*). In the words of the Supreme Court, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ In this case, the Court finds that Plaintiff has provided minimal factual evidence to satisfy the standard required to establish an adverse employment action. Although some of his allegations do not satisfy this standard[1], he in fact has evidence which controverts defendants' arguments. For example, Plaintiff has proof that he was unjustly excluded from a cash award granted regularly to all other personnel in the Yauco office, which Plaintiff managed. (Docket # 26, Ex. C., p. 175–6). He also stated that he received an "Opportunity to Improve" letter informing an adverse performance evaluation, when no letter was sent to Yauco's previous manager who had a similar long-standing serious loan delinquency problem. (Docket # 26, Ex. G., p. 8). He stated that he was impeded from working in the San Germán District Office with Andrés Irizarry, when his request would have constituted a career enhancing assignment because "at the District level, he will deal with other county offices in acting capacity when the RDM [Rural District Manager] is absent and he will deal with more complex projects with these entities." (Docket # 26, Ex. E, p. 75–6). In addition, Mr. Irizarry, Plaintiff's supervisor, allegedly ordered him to refrain from answering or refuting the disci-

---

1. For example, Plaintiff alleged that he was precluded from posting a sign with the office hours available for the general public.

(Docket # 26, Ex. E, pp. 174–77, Ex. C, p. 180).

plinary letters sent to him. (*Id.* at p. 59). Mr. Irizarry also excluded Plaintiff from participating in a commission to revise job descriptions because he preferred a younger employee, and he also eliminated Plaintiff as a candidate for another position in the Caguas office because Sepulveda "was an older fellow." (*Id.* at 185–6). In addition, Mr. Irizarry, scornfully and in a mocking manner, said to a group of employees in Plaintiff's presence, that he would request Plaintiff's "Medicare card," implying that Sepulveda was old. (*Id.* at 185–6, and 8–9). Finally, Irizarry expressed to another employee that he wanted Sepulveda out of Yauco, Juana Diaz, and the agency. (Docket # 26, Ex. J p. 3 ¶ 7). As a result of all these incidents, Plaintiff is currently suffering from "Major Depression single in partial remission." (Docket # 26, Ex. K).

Defendant alleges that Irizarry's comments did not constitute harassment because Irizarry is ten (10) years older than Plaintiff.[2] In addition, Defendant argues that Irizarry's comments constituted stray remarks unrelated to the decisional process itself and that they did not constitute direct evidence of discrimination.

Although stray remarks by themselves, lack the necessary link between the alleged speaker's discriminatory remark and the adverse employment decision, *Ayala–Gerena v. Bristol Myers—Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996), this case involves more than isolated comments. Plaintiff has pointed to evidence that he was excluded from a cash bonus granted regularly to all employees, that he received negative evaluations to which he was ordered not to reply, that he was overlooked for other positions which interested him, that he was excluded from a commission

allegedly because of his age, and that he was threatened with discharge through a reduction in force. These actions, taken together are sufficient to satisfy the First Circuit standard for adverse employment actions, and thus, Defendants' motion for summary judgment on this issue will be denied.

### III. Conclusion

Based on the above, Defendant's motion for summary judgment on Plaintiff's ADEA claim is **DENIED**. Defendants' motion on Plaintiff's Americans With Disabilities Act/Rehabilitation Act claims (Count III) are **GRANTED**.

**SO ORDERED.**

---

**2.** According to the defendant, Mr. Irizarry was born in September 1942 and plaintiff in May 1952.