# United States Court of Appeals
## For the First Circuit

No. 08-2068

ERICK CARRERAS,

Plaintiff, Appellant,

v.

SAJO, GARCÍA & PARTNERS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lynch, Chief Judge, and
Gajarsa[*] and Lipez, Circuit Judges.

Victor P. Miranda-Corrada for appellant.
María Teresa Juan Urrutia for appellee.

February 23, 2010

---

[*] Of the Federal Circuit, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>.**  In this workplace discrimination and retaliation suit, the district court ruled that plaintiff, Erick Carreras, failed to comply with Puerto Rico's anti-ferret rule, D.P.R.R. 56(c).  On this basis, it deemed as admitted portions of defendant Sajo, García & Partners' ("SGP") statement of uncontested facts and granted summary judgment to defendant.  Carreras argues on appeal that the district court improperly invoked Local Rule 56 and erred in rejecting his claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA"), and various Puerto Rico anti-discrimination laws.  We disagree and affirm.

## I.

We begin with a recitation of the basic facts underlying the dispute, derived from the facts explicitly admitted by Carreras. SGP, a marketing agency, hired Carreras as an Art Director in December 2003.  Carreras' responsibilities included preparing the creative art for products being marketed by SGP.  In August 2004, Carreras and Sajo Ruíz, an SGP partner, exchanged heated emails about Carreras' alleged failure to complete work on time.[1]  Carreras has type II diabetes, which he controls by taking insulin every morning and evening.  At the commencement of his

---

[1] Although Carreras characterizes Ruíz's email as a tantrum, he does not deny that it was sent and that he replied.

employment with SGP, Carreras filled out a form on which he indicated that he had diabetes and was dependent on insulin.

On October 21, 2004, Carreras emailed Ruíz informing him that he had worked late that evening and had been prevented from taking his insulin shot. Ruíz replied the next morning asking Carreras to clarify what had prevented him from taking his medicine and stating that there should be no obstacle to Carreras taking his treatment. In response, Carreras stated that he was prevented from administering his medicine because he had to stay late at the office.[2] SGP terminated Carreras' employment on October 25, 2004.

Carreras filed suit against SGP alleging that he had experienced discrimination based on his disability and retaliation for requesting a reasonable accommodation in violation of the ADA. 42 U.S.C. §§ 12101-12213. After discovery was complete, SGP moved for summary judgment and filed a separate Statement of Uncontested Facts in support of its motion. In response, Carreras submitted a document styled as "Plaintiff's Response and Objections to Defendant's Proposed Statement of Uncontested Facts." The district court found that statement to be defective under Puerto Rico Local Rule 56 because it failed to admit, qualify or deny certain facts

---

[2] SGP's personnel manual listed working hours as 9 a.m. to 6 p.m., but expressly stated that working hours are irregular in the advertising industry and that all employees must be available when necessary during and/or after normal hours. The only storage requirement for Carreras' insulin was refrigeration. SGP had a refrigerator available to employees at its offices.

proposed by SGP, it did not contain a separate section for the new facts it sought to introduce, and it did not contain appropriate citation to the record to support denied facts.

In accordance with the anti-ferret rule, the district court disregarded those portions of Carreras' opposition it found defective and deemed as admitted many of SGP's properly supported facts.  See D.P.R.R. 56(e).  With its recitation of the facts in its written opinion, the district court made clear the facts it deemed admitted.  The court focused primarily on those facts pertaining to the effect, or lack thereof, of Carreras' diabetes on his work and daily life.  In a footnote, the court explained that "the reason for [Carreras'] dismissal is in dispute.  However, because it is immaterial for the resolution of this case, we will eschew any discussion in this regard."  Hence, the court's recitation of "Uncontested Facts" in its opinion, where it sets forth the effect of its deeming analysis on the summary judgment record, does not focus on the retaliation claim.

After making its deeming determination, the district court granted summary judgment to SGP based on Carreras' failure to create a genuine issue of material fact as to whether he is disabled within the meaning of the ADA.  The court noted, however, that even if Carreras qualified as disabled, his arguments that SGP failed to accommodate his disability must fail because Carreras had neither requested nor been denied accommodation.  For the same

-4-

reason, the district court rejected Carreras' claim that he was retaliated against for making a request for reasonable accommodation.

Carreras appeals, contending that his statement complied with the local rule and that the district court erred in granting summary judgment based on its deeming order.

**II.**

Carreras argues that the district court improperly applied Local Rule 56(c), the District of Puerto Rico's anti-ferret rule. The rule states, in relevant part:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

D.P.R.R. 56(c). Subsection (e) of the rule states that citations must be "to the specific page or paragraph of identified record material supporting the assertion." D.P.R.R. 56(e). Failure to comply with the anti-ferret rule permits the court to "disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." D.P.R.R. 56(e). We review the district court's application of a local

rule for abuse of discretion. See Sánchez-Figueroa v. Banco Popular de Puerto Rico, 527 F.3d 209, 213 (1st Cir. 2008). While a district court may choose not to invoke the rule in response to every violation, we have consistently upheld the enforcement of the rule, and we treat the district court's decision to apply it with deference. See CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62-63 (1st Cir. 2008); Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007); Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). The rule is intended "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market, 520 F.3d at 62. It prevents parties from "improperly shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón, 511 F.3d at 219. As such, the rule is important to the functioning of the district court.

Here, Carreras did submit a response to SGP's Statement of Uncontested Facts. Although he argues that his response properly accepted or denied every fact with appropriate citation, Carreras properly denied only certain of SGP's facts. Accordingly, the district court stated that it would "partially disregard" Carreras' opposing statement of unconstested facts.[3] The record

_____

[3] Carreras argues that, despite its assertion to the contrary, the district court rejected his entire response to SGP's Statement of Uncontested Facts. We disagree. In its recitation of the facts,

-6-

shows that in many instances Carreras' response manifestly ignores the express requirements of the anti-ferret rule. Most blatantly, in at least two instances, Carreras' opposition fails to "accept, qualify or deny" the fact listed by his opponent. Instead, it explains discursively why Carreras believes the fact to be irrelevant. Furthermore, Carreras' opposition frequently fails to support denied facts with appropriate citation to the record.

Finally, Carreras' response includes argumentation asserting numerous additional facts. Those facts are often unsupported by record citations, they are not numbered, and they are not "contain[ed] in a separate section." Carreras' argument that the rule does not require additional facts to be adduced in a separate section is unavailing. The plain language of the rule specifically requires that additional facts be put forward in a "separate section." D.P.R.R. 56(c). In light of these substantial failings, the district court acted well within its discretion when it deemed as admitted a portion of SGP's properly supported facts.

---

set forth in a portion of the opinion entitled "Uncontested Facts," the district court made clear which facts it considered to be uncontested with citations to the record signifying that certain of those facts were derived from SGP's Statement of Uncontested Facts. As noted, the court's focus in this recitation was on Carreras' workplace discrimination claim, not his retaliation claim. The district court was under no obligation to go beyond the relevant facts, as it saw them, in order to catalogue the sufficiency of Carreras' opposition to every one of SGP's proposed facts.

To survive summary judgment on his discrimination and retaliation claims, Carreras must establish a genuine issue of material fact as to whether he experienced disability discrimination or was retaliated-against within the meaning of the ADA. Fed. R. Civ. P. 56(c).[4] Our review of the district court's grant of summary judgment is de novo. Cabán-Hernández, 486 F.3d at 8. We "draw all reasonable inferences in the light most favorable to the nonmovant." Id. We will not, however, "draw unreasonable inferences or credit bald assertions, empty conclusions, [or] rank conjecture." Id. (emphasis in original).

## A. Disability Discrimination under the ADA

The district court found that Carreras failed to establish a prima facie case of discrimination under the ADA because he could not establish that he is disabled within the meaning of the statute. Under the ADA, a disability is defined as: (a) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(1).[5] We have employed a three-part

---

[4] "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

[5] Although Carreras states on appeal that he was regarded as having an impairment, he did not assert this argument below and we deem it

-8-

test to determine whether an individual qualifies as disabled under the first definition, which is at issue here. First, does the plaintiff suffer a mental or physical impairment? Second, does the life activity limited by the impairment qualify as "major"? And finally, does the impairment, in fact, substantially limit that major life activity? See Calero-Cerezo, 355 F.3d at 20. The burden is on the plaintiff to establish these three elements. Id. Carreras contends that he is disabled because his diabetes is a physical impairment that substantially limits his ability to eat and see, two major life activities.

We must determine the existence of a disability "on a case-by-case basis." Albertson's, Inc., v. Kirkingburg, 527 U.S. 555, 566 (1999). Thus, we must assess the effect of Carreras' alleged impairment on his life, rather than relying on his diagnoses alone, in order to determine whether he is disabled within the meaning of the ADA. Id. We agree with Carreras that insulin-dependant diabetes is a physical impairment. See, e.g., Rohr v. Salt River Project Agric. Improvements and Power Dist., 555 F.3d 850, 858 (9th Cir. 2009) ("Diabetes is a 'physical impairment' because it affects the digestive, hemic and endocrine systems. . . .

_____

to be waived. Even if Carreras had not waived this argument below, it would fail here because his brief contains no support for the claim. As we have explained on many occasions, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" United States v. Rivera Calderon, 578 F.3d 78, 94 n.4 (1st Cir. 2009) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

-9-

."). It is similarly beyond dispute that eating and seeing qualify as "major life activities." See, e.g., Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 21 (1st Cir. 2002) (major life activities include "functions such as caring for oneself, . . . seeing"); Calero-Cerezo, 355 F.3d at 21 (recognizing eating as a major life activity for purposes of the ADA).

We cannot agree, however, that on the record before us there is any genuine issue of material fact as to whether Carreras' diabetes "substantially limited" his ability to eat or to see. "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.'" Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999), superseded by statute on other grounds, ADA Amendments Act of 2008, Pub. L. No. 110-325, 172 Stat. 3553 (2008). To be substantially limiting, an impairment must cause a person to be "unable to perform a major life activity that an average person in the general population can perform," or to be significantly restricted in the performance of a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1); see also Carroll v. Xerox Corp., 294 F.3d 231, 239 (1st Cir. 2002).[6] In assessing in this case the degree of

_____

[6] In considering whether a litigant's physical impairment is substantially limiting for purposes of the ADA, the inquiry is not confined to limitations that might occur in the workplace. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 200-01 (2002), superseded by statute on other grounds, ADA Amendments Act

limitation occasioned by a physical impairment, we also take into consideration "the effectiveness, side effects and burdens of a plaintiff's mitigating measures," in this case Carreras' twice-daily insulin shots.  Rohr, 555 F.3d at 859 (citing Sutton, 482 U.S. at 482-84).[7]   Our inquiry is "fact-intensive and individualized." Sepulveda v. Glickman, 167 F. Supp. 2d 186, 191 (D.P.R. 2001); Sutton, 527 U.S. at 483.

1. Carreras' claim that his diabetes substantially limits his vision

The facts of record fail to create a genuine issue of material fact as to whether Carreras' vision is substantially limited by his diabetes.  Carreras asserts that high blood sugar levels cause his vision to blur, constituting a substantial limitation under the ADA.  He does not contest, however, that his

---

of 2008, Pub. L. No. 110-325, 172 Stat. 3553 (2008).  Rather, courts must focus on whether a major life activity is substantially impaired in the course of a litigant's daily life.  Id. at 200-02.

[7] Carreras has made no argument about the effect of the ADA Amendments Act of 2008 on his claim.  See Pub. L. No. 110-325, § 2(a)(4)-(6), 122 Stat. 3553 (2008).  Regardless, that law is not retroactive where, as here, the disputed activity occurred before its passage and Congress expressed no clear intent to make the statute retroactive.  We have recently suggested as much, see Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009), and all circuits to consider the issue to date have so held.  See Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009) (per curiam); Fredericksen v. United Parcel Serv., 581 F.3d 516, 521 n.1 (7th Cir. 2009); Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 940 (D.C. Cir. 2009); Milholland v. Summer County Bd. of Educ., 569 F.3d 562 (6th Cir. 2009); E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

-11-

latest blurred vision episode occurred a year before he was deposed in this case. Nor does he set forth facts that would explain how such infrequent episodes of blurred vision cause him to be significantly restricted in his ability to see. "To qualify as disabling, a limitation . . . must be permanent or long term, and considerable compared to the [seeing] most people do in their daily lives." Fredricksen v. United Parcel Serv., Co., 581 F.3d 516, 522 (7th Cir. 2009) (citation and quotation marks omitted).

The facts show that Carreras' ability to see does not differ in a significant way from the ability to see of the general population. Cf. Albertson's, Inc., v. Kirkingburg, 527 U.S. 555, 565-67 (1999) (finding that monocular individuals must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial"); Kelly v. Drexel Univ., 94 F.3d 102, 106, 108 (3d Cir. 1996) (finding plaintiff's limp and inability to walk more than a mile or jog did not "substantially limit him in the relevant major life activity, walking"). It is undisputed that Carreras drives his son to school and himself to work every morning, drives home again in the evening, reads as part of his current employment, and performs other routine daily activities that presumably would not be possible if his vision were substantially impaired. See Scheerer v. Potter, 443 F.3d 916, 920 (7th Cir. 2006) (finding diabetic with "intermittent episodes of

-12-

significant neuropathy" not substantially limited in his ability to walk because "he nonetheless was generally able to walk and stand during the pertinent time period"). As described in the record, Carreras' diabetes does not limit his sight to a degree that would differentiate him from the rest of the population.

2. Carreras' claim that his diabetes substantially limits his eating

Carreras has also failed to raise a genuine issue of material fact as to whether his diabetes substantially limits his life activity of eating. It is undisputed that Carreras' diabetes requires certain adjustments to his diet. He avoids refined flours, drinks juice that is not artificially sweetened, and eats six meals a day. Proof that a medical condition "requires medication, a fixed meal schedule, [and] timely snack breaks," without more, does not amount to a "substantial limitation" under the ADA. Sepulveda, 167 F. Supp. 2d at 191 (quotation marks omitted).

The analysis of when and under what conditions diabetes is considered a disability for ADA purposes "is a matter of degree." Id. at 190. We recognize that living with diabetes may result in a complex calculus balancing food intake, activity level, and the amount of insulin administered. An individual living with diabetes may or may not experience a substantial limitation in his or her ability to eat as contrasted with the rest of the population. See, e.g., Lawson v. CSX Transp., Inc., 245 F.3d 916,

-13-

924 (7th Cir. 2001) (describing substantial limitation on eating entailed by "perpetual, multi-faceted and demanding treatment regime" for plaintiff's diabetes (quotation marks omitted)); Rohr, 555 F.3d at 859 (finding genuine issue of material fact as to whether plaintiff had a substantial impairment in eating where he described controlling his disease through a combination of diet and insulin as "being on a chemical rollercoaster" (quotation marks omitted)). Many diabetics follow a "severely restrictive, and highly demanding" regimen to control their disease from which any deviation could result in a trip to the emergency room. See Fraser v. Goodale, 342 F.3d 1032, 1041 (9th Cir. 2003).

The record indicates, however, that Carreras is at the far end of the spectrum from those plaintiffs who "cannot put a morsel of food" into their mouths "without carefully assessing whether it will tip [their] blood sugar[]" levels. Id.[8] He does not dispute that his twice daily insulin shots successfully control his diabetes. Cf. Lawson, 245 F.3d at 924 (finding jury question as to whether diabetic could meet the substantial limitation threshold because "even when taking insulin, [plaintiff's] 'ability to regulate his blood sugar and metabolize food is difficult, erratic, and substantially limited'"). Indeed, the facts are that, by taking two insulin shots each day and eating fairly often,

_____

[8] Carreras' complaint states that failure to take his insulin causes headaches and an undefined "loss of control of his condition."

-14-

Carreras succeeds in preventing his diabetes from substantially limiting any of his major life activities. Compare Sutton, 527 U.S. at 488-89 (the wearing of corrective lenses to neutralize the effects of myopia negated substantial impairment of vision caused by plaintiff's disability) with Lawson, 245 F.3d at 925-26 (the need to coordinate "multifaceted factors" and to maintain "constant vigilance" over plaintiff's insulin regimen, coupled with the grave effects of noncompliance, distinguished plaintiff's case from Sutton).

### 3. Summary

In summary, Carreras adduces no evidence that his diabetes causes more than minor limitations on his eating and seeing. See Rohr, 555 F.3d at 860 ("If daily insulin injections alone more or less stabilized [plaintiff's] blood sugar levels, such that any limitation imposed on his diet would be minor, then [his] major life activity of eating might not be substantially limited."). We therefore agree with the district court that Carreras has not raised a genuine issue of material fact as to whether he is disabled under the ADA.

## B. Retaliation under the ADA[9]

The retaliation provision in the ADA states that "[n]o person shall discriminate against any individual because such

---

[9] We note that the district court did not circumscribe the summary judgment record with a deeming order that applies to the retaliation claim.

-15-

individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). In order to establish a claim of retaliation under the ADA, a plaintiff must show (1) that he engaged in protected conduct, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997).[10] It is well established that "requesting an accommodation, without filing a formal charge or engaging in other specific behaviors listed in § 12203(a), is nonetheless behavior protected from an employer's retaliation." Wright v. CompUSA, Inc., 352 F.3d 472, 477-78 (1st Cir. 2003). Even if he fails to bring a successful disability claim under the ADA, a plaintiff may nonetheless assert a claim for retaliation. Soileau, 105 F.3d at 16.

Once a plaintiff makes out a prima facie case of retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision." Wright, 352 F.3d at 478 (citation and quotation marks omitted); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973) (establishing burden-shifting framework for Title VII cases). The

---

[10] In Soileau, we explained that because of the relatedness of the two statutes, "guidance on the proper analysis of [an] ADA retaliation claim is found in Title VII cases." 105 F.3d at 16. We therefore refer to cases interpreting Title VII's retaliation provision as well as those specifically addressing the ADA in conducting our analysis of Carreras' retaliation claim.

employer's burden is "one of production, not persuasion." <u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000). If the employer produces a legitimate reason for its decision, "the burden under <u>McDonnell Douglas</u> shifts back to the plaintiff to show that the motive was discriminatory [or retaliatory]." <u>Sabinson</u> v. <u>Trs. of Dartmouth Coll.</u>, 542 F.3d 1, 4 (1st Cir. 2008) (citing <u>Reeves</u>, 530 U.S. at 142-43); <u>see</u> <u>also</u> <u>Kersey</u> v. <u>Wash. Metro. Area Transit Auth.</u>, 586 F.3d 13, 17 (D.C. Cir. 2009). Thus, the plaintiff bears the ultimate burden to create a plausible inference that the employer had a retaliatory motive. <u>Benoit</u> v. <u>Technical Mfg. Corp.</u>, 331 F.3d 166, 174 (1st Cir. 2003).

Carreras argues that his email to Ruíz and three other SGP supervisors sent on October 21, 2004, in which he informed them that he had to work late and had been prevented from taking his insulin shot, constituted a request for a reasonable accommodation under the ADA.[11] He contends that his firing on October 25, 2004 was a direct result of that request for accommodation. He asserts that he is entitled to an inference of causal connection between the two events because his termination occurred in such close temporal proximity to his engaging in protected conduct.

---

[11] Carreras attempts to argue, in the alternative, that his email somehow constituted opposition to his employer's "interfer[ence] with the treatment for his diabetes," and that such opposition is protected conduct under the ADA. This claim is undeveloped and therefore waived. Even if it were not, our analysis of the retaliation claim would be the same.

The district court found that Carreras had not requested an accommodation within the meaning of the ADA and granted summary judgment for SGP on the claim of retaliation. We affirm that judgment, albeit on different grounds. See Estades-Negroni v. Assocs. Corp. of North Am., 377 F.3d 58, 62 (1st Cir. 2004) ("We may affirm . . . on any grounds supported by the record.").

For convenience we assume, without deciding, that Carreras has made his prima facie case. As noted, once an employee has made a prima facie showing of retaliation, the burden shifts to the employer to produce evidence that there was a legitimate, non-retaliatory motive for the adverse employment action. Wright, 352 F.3d at 478. SGP has met its burden. SGP claims that Carreras' deficient performance and insubordination prompted the SGP partners to terminate his employment. In support of its claim, SGP introduced the email from Ruíz to Carreras. That email, written in all capital letters and dated August 25, 2004, reads, in relevant part:

> IT IS VERY FRUSTRATING TO NOT BE ABLE TO COUNT
> ON YOUR PRESENCE WHEN I MOST NEED YOU. I
> CERTAINLY UNDERSTAND THE UNEXPECTED, BUT IT
> ALWAYS HAPPENS THAT WHEN I HAVE A MEETING WITH
> A CLIENT, I AM MISSING THE UNFINISHED
> MATERIAL; AND THE RESPONSIBLE PERSON HAS A
> PERSONAL ISSUE TO SOLVE.[12]
>
> . . .

---

[12] From Carreras' response to this email, which is also in the record, we deduce that the "personal issue" to which Ruíz refers was Carreras' failure to come to work on time because he did not have his glasses.

-18-

> IN THE FUTURE, CALL ME DIRECTLY AT THE CELL
> PHONE OR AT MY HOME, AND I'LL COME AND FINISH
> THE ART EVEN IF I HAVE TO WORK ALL NIGHT.

This documentary evidence showing Ruíz's dissatisfaction with Carreras meets SGP's burden of producing evidence that demonstrates its legitimate, non-retaliatory reason for firing Carreras.

In the face of such evidence, Carreras bears the ultimate burden of establishing that SGP's stated reason for his dismissal is a pretext for retaliation. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). Carreras attempts to meet this burden by pointing to what he characterizes as inconsistencies in statements given by SGP managers about the reason he was fired, when the decision to fire him was made, and why there was a delay between the making of that decision and the firing. Specifically, Carreras cites deposition testimony showing that two of three members of SGP's management recalled that the decision to terminate Carreras was made in early-to-mid October, while another thought it was made at the end of September. Further, Carreras cites deposition testimony showing that one of those managers thought there was some delay between the decision and Carreras' firing because Carreras might improve his performance in that time, a second thought it was in order to hire a replacement, and a third thought the delay involved the need to complete legal paperwork. Finally, in its Joint Initial Scheduling Conference Memorandum, SGP said the reason for Carreras' firing was

-19-

that his "output was not timely and up to the quality standards that defendant requested for him." By contrast, Carreras argues, Ruíz stated in his deposition that Carreras did good work, but that he was fired because of "coworker complaints and because he was not getting his job done in time."[13]

An employee can establish pretext "by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Id. at 56 (quotation marks and citation omitted) (emphasis added). The minor inconsistencies cited by Carreras, however, do not undermine SGP's contention that his work performance was unsatisfactory. The slight differences in SGP's accounts of the timing of the decision or the reason for the short delay before its implementation do not permit a reasonable factfinder to infer that SGP did not fire Carreras because of his poor work performance. The evidence was consistent on the essential point, i.e., that Carreras' work was untimely and therefore unsatisfactory. Our laws are designed to ensure against discrimination and retaliation, not "inaccuracy by an employer." Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 535 (1st Cir. 2002). Moreover, the dissatisfaction with Carreras was expressed

---

[13] Carreras also cites the lack of "written evidence" of any deficiencies in his performance during the months preceding his firing. In making this argument, Carreras overlooks the August 2004 email from Ruíz.

-20-

in writing two months before he complained about having to work late and was fired. This is not a case in which the employer's "nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action." Santiago-Ramos, 217 F.3d at 56.

In the final analysis, the only evidence in the summary judgment record supporting Carreras' retaliation claim is the temporal proximity between his October 21, 2004 email to Ruíz and his firing on October 25, 2004. Such temporal proximity may suffice for a prima facie case of retaliation. It does not satisfy Carreras' ultimate burden to establish that the true explanation for his firing was retaliation for engaging in protected conduct rather than poor performance. See Holloway, 275 F. App'x at 27 (suspicions raised by temporal proximity "can be authoritatively dispelled . . . by an employer's convincing account of the legitimate reasons for the firing"); see also Soileau, 105 F.3d at 16-17 (rejecting claim of retaliation based solely on temporal proximity). We affirm the entry of summary judgment for SGP on Carreras' retaliation claim under the ADA.[14]

Affirmed.

---

[14] We also affirm the district court's dismissal without prejudice of Carreras' claims arising under Puerto Rico law. See Penobscot Indian Nation v. Key Bank of Maine, 112 F.3d 538, 564 (1st Cir. 1997) ("[T]he decision to retain or disclaim jurisdiction over the remaining state law claims at issue in this case lies in the broad discretion of the district court.")