# United States Court of Appeals
## For the First Circuit

No. 10-1137

KAREN FAIOLA,

Plaintiff, Appellant,

v.

APCO GRAPHICS, INC.

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Boudin, Selya and Stahl, Circuit Judges.

Corinne Hood Greene for appellant.
Matthew J. Griffin, with whom Philip M. Cronin and Peabody & Arnold LLP were on brief, for appellee.

December 10, 2010

**STAHL**, <u>Circuit Judge</u>.  Karen Faiola brought suit against her former employer, APCO Graphics, Inc. ("APCO"), for wrongful termination on the basis of disability in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>, and the Massachusetts analogue, Mass. Gen. Laws. ch. 151B ("Chapter 151B").  The district court granted summary judgment in favor of APCO because Faiola failed to show that she was disabled within the meaning of the statutes.  We affirm.

## I. Background

Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable to Faiola, the nonmovant, and resolve all reasonable inferences in her favor.  <u>Stonkus</u> v. <u>City of Brockton Sch. Dep't</u>, 322 F.3d 97, 102 (1st Cir. 2003).

APCO is a commercial sign-maker headquartered in Atlanta, Georgia.  It maintains a regional office in Franklin, Massachusetts, serving the New England territory.  From November 1991 to February 2007, when Faiola was terminated, Faiola worked as a sales representative and manager of APCO's Franklin office.  She was responsible for meeting or exceeding sales quotas; making periodic factory visits; managing her sales assistant; and maintaining the office by, for example, "dumping the trash" and "keeping up a good appearance" in the showroom.  Faiola reported to Teresa Cox, APCO's vice president of sales and marketing.

In 2003, Faiola's work performance at APCO began to decline. From 2003 to 2006, Faiola met only forty to sixty-six percent of her annual sales quotas and performed as one of APCO's lowest grossing sales representatives nation-wide. In 2005, Cox informed Faiola that the New England territory had the lowest sales volume and that Faiola needed to improve her performance. In March 2006, Cox requested that Faiola take an aptitude test because her sales were in a "slump."

The summary judgment record indicates that during periods of her employment, Faiola suffered from ongoing mental health conditions and a bout of high blood pressure. Dr. Karen Dempsey, a psychotherapist, treated Faiola from May 2004 until September 2007. During her first visit with Faiola, she recorded that Faiola was "sad, [] low energy, disorganized, anxious, [and] forgetful." She diagnosed Faiola with dysthymia, a low level depression that is not incapacitating, and over the course of treatment, she prescribed various medications for Faiola, including Prozac and Klonopin.

Faiola's dysthymia went into remission in April 2006 and reappeared by April 2007. Dr. Dempsey found that although Faiola experienced stress and anxiety in early January 2007, due to the breakup of a long-term relationship and concern over her father's ailing health, there were no signs of depression. At no point did Dr. Dempsey diagnose Faiola with classic depression or an anxiety

disorder. Additionally, Dr. Dempsey never found that Faiola was prevented from engaging in any of life's typical activities, nor did she ever place work limitations or physical restrictions on Faiola.

Barbara Gray, a clinical social worker, began counseling Faiola in 1991. She noted that in January 2007, Faiola presented herself with "low energy" and was "mentally exhausted" from her relationship troubles and concern for her father. Again, however, the record indicates that despite these events, Faiola was "stable" and "able to go about [her] life."

Faiola began treatment with Dr. Edward Levitan in September 2006 after she tested her blood pressure at a CVS pharmacy and found the reading high. Dr. Levitan prescribed medication for Faiola, and, by early March 2007, Faiola's blood pressure returned to normal range. At no point did Dr. Levitan instruct Faiola to limit her daily activities or avoid travel by airplane.

Faiola testified in her deposition that throughout her tenure at APCO and despite her various mental and physical health conditions, she was "always able to perform [her work] activities and roles" and "all the essential aspects of [her] job." She walked three miles a day, traveled by airplane both for work and pleasure, and in 2006, she took a second job selling insurance.

Since her termination, Faiola has made business trips to Orlando, Florida and Atlantic City, New Jersey.

Faiola's wrongful termination allegations stem from events that occurred in February 2007. On February 2, 2007, Faiola received an e-mail from APCO employee Andrea Blackwood regarding logistics for an upcoming annual sales conference in Atlanta. Faiola reported to Blackwood that she was "going through a personal crisis" and was "not sure if [she was] going to be up to" the conference, and she specifically informed Cox that she was going through a "rough time." Faiola did not reference any health conditions that prevented her from attending the conference, nor did she reference the conference itself when she e-mailed Cox.

On February 21, 2007, Cox traveled to the Franklin regional office for a scheduled visit. During the visit, Cox and Faiola met with customers around the territory. In conversation with Cox during the day, Faiola raised some issues that she experienced with certain APCO products. That night at dinner, Faiola and Cox discussed Faiola's personal problems and her medical conditions. Faiola told Cox that Dr. Levitan had instructed her to avoid stress. At no point did Faiola and Cox discuss the upcoming sales conference, nor did Faiola explain that her conditions prevented her from flying to or attending the upcoming conference. The next morning, before Cox left to return to Atlanta, she terminated Faiola purportedly due to her poor sales performance.

-5-

Subsequently, Faiola brought suit alleging disability discrimination.[1] The district court granted APCO's motion for summary judgment. It found that Faiola failed to establish that she was disabled because her alleged impairments did not substantially limit a major life activity. Specifically, it found that flying was not a major life activity, and to the extent that flying implicated the major life activity of travel, Faiola was not substantially limited. Faiola timely appealed.

## II. Analysis

We review a district court's grant of summary judgment de novo. Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 469 (1st Cir. 2010). We may affirm a district court's ruling "on any grounds supported by the record." Carreras v. Sajo, García & Partners, 596 F.3d 25, 36 (1st Cir. 2010) (quoting Estades-Negroni v. Assocs. Corp. of North Am., 377 F.3d 58, 62 (1st Cir. 2004)). Summary judgment is appropriate "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Once the moving party makes a sufficient preliminary showing that no genuine issue of material fact exists, the nonmovant must show a factual dispute without relying on "improbable inferences, conclusory allegations, or rank

---

[1]Faiola also brought claims for breach of contract and breach of the covenant of good faith and fair dealing. Faiola does not appeal the grant of summary judgment on these claims.

-6-

speculation." Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).

Faiola appears to assert two theories of disability discrimination: (1) she was terminated because of her disabilities, and (2) APCO failed to provide a reasonable accommodation because it did not excuse Faiola from flying to and attending the sales conference. We find that both theories of liability fail because Faiola did not make the required threshold showing of disability under the statutory schemes at issue.

To prove disparate treatment under both Title I of the ADA and Chapter 151B,[2] a plaintiff must first show that: (1) she suffers from a disability as defined by the ADA and Chapter 151B; (2) she was nevertheless able to perform the essential functions of her job, with or without reasonable accommodation; and (3) her employer took an adverse employment action against her because of her protected disability. See Carroll v. Xerox Corp., 294 F.3d 231, 237 & n.3 (1st Cir. 2002). To make out a reasonable accommodation claim, a plaintiff must establish the first two prongs set forth above and also that the employer knew of her

---

[2]For purposes of this lawsuit, analysis under the ADA and Chapter 151B is identical. See, e.g., Sensing v. Outback Steakhouse of Fla., L.L.C., 575 F.3d 145, 153-54 (1st Cir. 2009) (noting that federal law construing the ADA should be followed in interpreting Massachusetts disability law). Although the ADA uses the term "disability," and Chapter 151B uses the term "handicap," the statutory definitions are essentially the same, id., and we use the term "disability" solely for consistency.

disability but did not reasonably accommodate it upon a request. Id. at 237-38; see also Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001).[3]

Faiola sought to prove that she suffered from a disability by demonstrating a physical or mental impairment that substantially limited one or more of her major life activities. Carreras, 596 F.3d at 32. In assessing this standard, we use a three-part test: (1) whether the plaintiff suffered a mental or physical impairment, (2) whether the life activity limited by the impairment qualifies as "major," and (3) whether the impairment substantially limited the major life activity. Id. The inquiry is individualized. Id. at 33.

A "substantial limitation" is one that is "permanent or long-term." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).[4] Pursuant to the ADA regulations, a person must

---

[3]Although we affirm on the ground that Faiola did not establish disability, it appears that Faiola's reasonable accommodation claim fails also because Faiola never sought an accommodation. To make out a reasonable accommodation claim, a plaintiff must show that a proposed accommodation would enable her to perform the essential functions of her job. Reed, 244 F.3d at 259. An accommodation request must be "direct and specific" and "linked to some disability." Id. at 261. Here, the record demonstrates only that Faiola told Ms. Blackwood that she was not sure if she would "be up" to the conference because of personal problems. There is no reference to Faiola requesting accommodation because of her mental and physical ailments, nor is there any record explanation that the accommodation would help Faiola perform the essential functions of her job.

[4]The ADA Amendments Act of 2008, which went into effect on January 1, 2009, has since expanded the definition of "disability"

be unable to perform, or significantly restricted in the performance of, a major life activity that an average person in the general population can perform. 29 C.F.R. § 1630.2(j)(1); see Carreras, 596 F.3d at 33. Relevant factors include the nature and severity of the impairment, its duration or expected duration, and its actual or expected permanent or long-term impact. 29 C.F.R. § 1630.2(j)(2); see Carroll, 294 F.3d at 239.

Faiola premised her disability discrimination claims on the fact that flying to and attending the APCO sales conference would be stressful, and that Dr. Levitan told her to avoid undue stress. The parties disagree as to what "major life activity" these claims implicate. On appeal, Faiola characterizes them as impacting her ability to work, and she asserts that the district court erred by addressing only "travel" and not "work" as her major life activity affected. APCO counters that Faiola's claims asserted at the district court concerned only an inability to travel by airplane and that any claims related to work are undeveloped and waived.

Although we find vague the major life activity or activities that Faiola pled and argued at the district court, no matter how the claims are cast, they fail. No record evidence

from that laid out in Toyota. Toyota remains the controlling law here, however, since Faiola brought suit in 2008 and the amendments are not retroactive. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009).

exists to demonstrate that Faiola's impairments "substantially limited" any alleged major life activities.[5]

To the extent that Faiola's claims rest on her inability to work, they are unavailing. To determine a substantial limitation as to work, this court looks to whether the plaintiff can show that she is significantly restricted in her ability to perform "a class of jobs" or "a broad range of jobs in various classes." Carroll, 294 F.3d at 239-40 (citations omitted). An "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id. at 240 (quoting 29 C.F.R. § 1630.2(j)(3)(i)).

Here, Faiola's alleged inability to attend the APCO sales conference does not constitute a substantial limitation as to work. It was not a restriction relating to the performance of a class of jobs or broad range of jobs, nor was it even a "single, particular job" that she was restricted in performing. Moreover, the supposedly substantial nature of her impairment is undercut by her ability to perform "all the essential aspects of [her] job," from managing her sales assistant to handling menial tasks. She was under no physical or behavioral restrictions, and her treating healthcare providers explained that she was stable and capable of engaging in any of life's activities. Although Faiola peppers her

---

[5]Accordingly, we need not decide whether Faiola's health conditions constituted "impairments" or whether "work" and "flying" are "major life activities."

briefs with her symptoms and diagnoses in an attempt to prove disability, "[i]t is insufficient for individuals . . . to merely submit evidence of a medical diagnosis of an impairment" to prove a substantial limitation.  Toyota, 534 U.S. at 198.

To the extent that Faiola's claims rest on her inability to fly, they also fail.  No healthcare provider restricted Faiola's ability to fly, and Dr. Levitan stated that someone with Faiola's blood pressure readings would not be at risk on an airplane. Moreover, Faiola traveled frequently by airplane before the APCO sales conference at issue, and she has made business trips to Florida and New Jersey since her termination.

### III.  Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment.

So ordered.