OPINION OF THE COURT
Anthony F. Shaheen, J.
Defendants move to dismiss the first, second, third, fourth, fifth, and sixth causes of action alleged in the amended complaint for failure to state a cause of action and, in the alternative, for summary judgment dismissing those causes of action. Defendants’ motion was served prior to service of an answer pursuant to CPLR 3211 (a) (7). The alternative request for summary judgment merely references the transcript of the examination of plaintiff conducted pursuant to General Municipal Law § 50-h. The court declines to treat the motion as one for summary judgment and will only address the sufficiency of the allegations of the amended complaint.
Plaintiff was employed by the Oneida County Department of Social Services from on or about January 4, 2007 to on or about March 26, 2010.
Plaintiff alleges that her direct supervisor commenced a “campaign of harassment” against her in January 2010 which caused plaintiff to suffer “psychological trauma and harm.” Plaintiff complained to her Union representative about this alleged harassment and apparently believed that the Union was pursuing a grievance on her behalf.
Plaintiff claims that the harassment by her supervisors resulted in emotional damages which have been diagnosed as major anxiety disorder, major depressive disorder, and impulsive *441 disorder. Plaintiff contends that these emotional conditions rendered her disabled within the meaning of the Americans with Disabilities Act, the Rehabilitation Act, and the Human Rights Law of the State of New York. Plaintiff notified defendants of her diagnoses and requested a “reasonable accommodation.” In response, according to plaintiff, defendants commenced a course of action “in retaliation.” Plaintiff alleges that in March 2010 she was subjected to “unlawful disciplinary action on the pretext that her sick time usage was excessive.”
On or about March 26, 2010, defendant Soldato, Commissioner of Social Services, sent plaintiff a certified letter informing her that her employment was “terminated effective immediately” due to serious misconduct which was set forth in the letter. The alleged misconduct included charges of “falsification of official records” and “inability to execute Caseworker duties in a competent manner.”
Plaintiffs Union, which had sole authority to request a post-termination hearing pursuant to Article XXII, 22.8 of the Collective Bargaining Agreement (CBA), did not request such a hearing, and plaintiff contends that the failure to afford her a post-termination hearing denied her rights to procedural due process under the Fourteenth Amendment to the United States Constitution.
Following her termination plaintiff obtained employment with the House of the Good Shepard. Plaintiff alleges that she was fired from her new position “due to false, stigmatizing and retaliatory statements made to Plaintiffs new employer by Defendants.”
Plaintiff alleges that she was wrongfully terminated, was denied her right to procedural due process, and was “subjected to irreparable injury and harm to her reputation and career” as a result of defendants’ actions.
First Cause of Action
In the first cause of action, plaintiff alleges that defendant’s failure to afford her a post-termination hearing deprived her of her property interest in continued employment with defendant County without due process of law in violation of the Fourteenth Amendment to the United States Constitution.
In determining whether plaintiff has a procedural due process claim the first question to be answered is whether plaintiff had a property interest in her continued employment which was entitled to constitutional protection. (Cleveland Bd. of Ed. v *442 Loudermill, 470 US 532 [1985]; see also Board of Regents of State Colleges v Roth, 408 US 564, 576-578 [1972].) Plaintiff alleges that at the time of her termination she was a “non-probationary employee in the competitive class,” and defendants do not dispute that fact. As the Loudermill Court noted, “Property interests are not created by the Constitution, ‘they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .’ Board of Regents v. Roth, supra, 408 U.S., at 577, 92 S.Ct., at 2709.” (Cleveland Bd. of Ed. v Loudermill at 538.)
The plaintiff possessed a property right in her continued employment with the defendant County. Having found that plaintiff had a constitutionally protected property interest, “the question remains what process is due.” (Morrissey v Brewer, 408 US 471, 481 [1972].) The Constitution guarantees the right to due process, and determination of the minimum procedural requirements that are due is a matter of federal law. (Louder-mill at 541.)
In analyzing the constitutional sufficiency of the process afforded a terminated public employee with a property interest in her continued employment, “the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures” (id. at 547 n 12). Prior to termination the employee need only be provided with notice and an opportunity to respond with reasons why termination is not appropriate (id. at 546), but the less extensive pretermination procedures only pass constitutional muster when they are followed by a full post-termination evidentiary hearing (id.).
Upon being hired by defendant, plaintiff automatically became a member of the United Public Service Employees Union (Union) and was covered by the CBA. The CBA provided in Article XXiy 24.1 that members of the Union could not invoke the procedures of Civil Service Law §§ 75, 76 and 77 in matters relating to discipline and termination and further provided in Article XXII, 22.8 that only the Union could request an arbitration hearing.
Plaintiff alleges that although her Union representative assured her that a grievance would be filed, the Union representative thereafter refused to take her calls and failed to notify plaintiff that no action would be taken in regard to her termination until on or about June 22, 2010, nearly three months after she was terminated.
*443 The parties agree that plaintiff had no right to request a post-termination hearing herself without regard to the CBA. She was totally dependent upon the Union to request the post-termination hearing because the CBA provided in Article XXII, 22.8A that only the Union had the right to request an arbitration hearing.
Plaintiff alleges that the Union in effect waived her right to a post-termination hearing, and the question is whether vesting the Union with sole discretion to waive this constitutionally mandated hearing violates the due process guarantee of the Fourteenth Amendment. The court finds that, if proved, any “custom, policy, or practice of not affording post-termination hearings to employees who are terminated but do not have the support of their Union to secure post-termination hearings” would violate the due process rights of those employees guaranteed by the Fourteenth Amendment.
Defendant’s motion to dismiss the first cause of action for failure to state a cause of action is denied.
The cases cited by defendants are distinguishable from the present case. In Gansas v City of New York (240 Fed Appx 435 [2d Cir 2007]), the affected employee had the option of either using the procedure available to him pursuant to Civil Service Law §§ 75 and 76 or proceeding with the grievance procedure set forth in the collective bargaining agreement. Gansas signed a written waiver of his right to a section 76 hearing and chose instead to proceed with the grievance procedure, which included binding arbitration. Gansas’ Union counsel waived his right to arbitration based upon their mistaken belief that he had pleaded guilty to a crime. According to the court, the Union and Gansas had agreed “that the union would be authorized to terminate the arbitration if Gansas pled guilty to a crime” (240 Fed Appx at 437). In the instant case, it is alleged that the Union simply did nothing. The Circuit Court adopted District Court Judge Glasser’s opinion, in which he found that “[t]he city need only make available the opportunity for an adversarial hearing,” and, although “Gansas was afforded such an adversarial hearing,” he “waived it in favor of the collective bargaining grievance procedure.” (Gansas v City of New York, 2006 WL 2166869, *7, 2006 US Dist LEXIS 52419, *19-20 [ED NY 2006].) Judge Glasser concluded that “it is the opportunity for an adversarial hearing or equivalent grievance procedure, whether or not the terminated employee actually avails himself of such processes, that satisfies the City’s constitutional obligations” (2006 WL *444 2166869, *7, 2006 US Dist LEXIS 52419, *20 [2006]). While the plaintiff in Gansas had signed an explicit written waiver of his right to a hearing under sections 75 and 76 of the Civil Service Law, the plaintiff here did not have any such option to waive: the CBA’s grievance procedure was plaintiff’s only recourse since the CBA purportedly waived the sections 75 and 76 rights of all covered employees.
The waiver of a constitutional right to an adversarial post-termination hearing must be clear and unequivocal (see Fuentes v Shevin, 407 US 67, 95 [1972]), and the inclusion of a waiver provision in the CBA may not pass constitutional muster. Whether a collective bargaining agreement can effectively waive the Fourteenth Amendment due process rights of the covered employees is a pivotal issue which has generated judicial discussion if not a definitive holding. (See e.g. Ciambriello v County of Nassau, 292 F3d 307, 321 n 7 [2d Cir 2002]; Romano v Canuteson, 11 F3d 1140 [2d Cir 1993].)
In determining whether the plaintiff has been afforded due process, the critical importance of a prompt post-termination adversarial hearing has been emphasized repeatedly by the federal appellate courts. (See Loudermill, supra; Locurto v Safir, 264 F3d 154 [2d Cir 2001].) The party contending that the right to an adversarial post-termination hearing has been waived thus bears a heavy burden of persuasion. Wdiether the plaintiffs right to seek an adversarial post-termination hearing has been effectively waived in the CBA is a question that cannot be resolved on the present motion to dismiss. Ultimately, the court may find that the plaintiff was entitled to more due process than the CBA afforded her, and may conclude that “the post-deprivation grievance procedures outlined in the CBA are constitutionally inadequate . . . .” (Ciambriello v County of Nassau at 323.)
The decision of U.S. Magistrate Judge Mayeron in Schram v City of Minneapolis (2010. WL 4193077, 2010 US Dist LEXIS 115925 [D Minn 2010]) does not have controlling precedential value but is compellingly persuasive. In that case Judge Mayeron held that the Union’s failure to request an arbitration hearing could not deprive the employee of his constitutional right to a post-termination hearing.
At the time of his termination Schram was informed that he had the choice of either proceeding with the grievance procedure under the labor agreement or requesting a hearing before the Civil Service Commission (CSC). Schram elected to have the Union submit a grievance on his behalf.
*445 The Union filed a grievance at Schram’s request on October 23, 2008. On December 18, 2008 the Union notified him that it had decided not to pursue arbitration on his behalf. Schram promptly wrote to the CSC notifying it of his intent to appeal his termination. The CSC denied Schram’s appeal as untimely, finding that he did not submit his request for a hearing within 10 days of the October 24, 2008 termination.
Only the Union had the right to request arbitration under the labor agreement, and once the grievance was filed Schram could not have requested a hearing before the CSC. When the Union decided not to pursue arbitration, it informed Schram that he could then request a hearing before the CSC. The CSC disagreed, finding that the request was untimely since it was made beyond the 10-day post-termination period. If the CSC’s denial of a hearing on the basis of untimeliness were upheld, the Union would have in effect denied Schram his right to a post-termination hearing. The Schram court held that such a result would deprive Schram of his right to due process under the Fourteenth Amendment:
“WThere as here, it is solely the Union’s right to grieve the termination, and the Union has the right to change its decision to grieve the dispute after the 10-day deadline to elect the CSC hearing passed, the employee is faced with a de facto bar from proceeding with a CSC hearing. This is particularly problematic when the Union takes longer than ten days after termination to make its decision on whether to proceed on with arbitration, and there is no requirement that it make that determination before the ten-day limitation expires” (2010 WL 4193077, *9, 2010 US Dist LEXIS 115925, *30 [citations omitted]).
The Schram court was particularly troubled by the fact that the Union had the exclusive right to pursue the grievance: “The procedure in dispute gave Schram a choice that included a grievance process that did not give him an absolute right to grieve his termination post-termination — at the end of the day, it was Union’s right and not his right to pursue the grievance.” (2010 WL 4193077, *10, 2010 US Dist LEXIS 115925, *33.)
Since the refusal to allow Schram to proceed with a CSC hearing was held to be a denial of due process, the court directed the City to allow Schram to proceed with a hearing before the CSC to challenge his termination.
The Schram court also held that procedures should be put in place to permit an employee to pursue the CSC hearing process *446 once his Union refuses to pursue the grievance: “[A]ny financial and administration burden necessitated by permitting an employee to elect the CSC appeals process in the event that the Union decides not to continue with his or her grievance is minimal compared to employee’s interests in maintaining his or her employment” (2010 WL 4193077, *10, 2010 US Dist LEXIS 115925, *32 [citations omitted]).
In this case Sowich should have been able to obtain a post-termination hearing if she requested one promptly upon receipt of notification from the Union that it was not pursuing her grievance. Permitting the Union unfettered discretion to close the only route available for a post-termination hearing flies in the face of the Fourteenth Amendment due process guarantee.
Discovery will reveal the extent to which the CBA, as administered by plaintiff’s Union representatives, afforded plaintiff due process, and the extent to which plaintiff availed herself of the due process opportunities afforded. (See e.g. Costello v Town of Fairfield, 811 F2d 782 [2d Cir 1987]; Parrett v City of Connersville, Ind., 737 F2d 690 [7th Cir 1984].)
Second Cause of Action
In the second cause of action, plaintiff seeks damages under 42 USC § 1983 for violation of her constitutional rights to procedural due process before being deprived of her “liberty interest in her good name and reputation and continued employment with other employers as a result of false or stigmatizing statements by the Defendants herein.” Plaintiff alleges that she “was not afforded an opportunity to challenge her termination nor Defendants’ accusations and her name and reputation have been sullied.”
The Second Circuit has described the constitutionally protected liberty interest as follows: “Liberty as guaranteed by the Fourteenth Amendment denotes that right of the individual to engage in the common occupations of life and to enjoy privileges recognized as essential to the orderly pursuit of happiness.” (Goetz v Windsor Cent. School Dist., 698 F2d 606, 609 [2d Cir 1983] [citation omitted].) As the Goetz court held, “A liberty interest is therefore implicated and name-clearing hearing required where an employer creates and disseminates a false and defamatory impression about an employee in connection with the employee’s termination.” (Id. at 610.)
The allegations in plaintiffs termination letter accusing her of falsifying official records were certainly stigmatizing and *447 arose in connection with her discharge. The allegations of incompetence leveled against plaintiff in the termination letter also may be sufficiently stigmatizing. The truth or falsity of the stigmatizing allegations and the factual issue of whether and to what extent defendants disseminated the stigmatizing information concerning her discharge cannot be resolved on this motion. (Id.)
Plaintiff has sufficiently pleaded a cause of action for deprivation of her liberty interest without due process of law.
The Goetz court’s observation on the issue of the process that is due is also instructive: “If it is found that Goetz was deprived of a liberty interest, he may well be entitled to more due process than the procedure under the collective bargaining agreement afforded him.” (Id.)
The defendants’ motion to dismiss the second cause of action for failure to state a cause of action is denied.
Third, Fourth, and Fifth Causes of Action: Employment Discrimination Claim under Title II of the Americans with Disabilities Act (ADA)
Defendants seek dismissal of the third, fourth and fifth causes of action insofar as they are based upon title II of the ADA, arguing that employment discrimination claims can only be brought under title I of the ADA.
The U.S. Supreme Court has not ruled on whether an employment discrimination claim can be brought under title II of the ADA. The Second Circuit did not reach the issue in Mullen v Rieckhoff (189 F3d 461 [1999] [table; text at 1999 WL 568040, *1, 1999 US App LEXIS 18150, **2 (Ct App 1999)]), but noted in its decision “a split of authority over whether an employment discrimination plaintiff may avoid the ADA’s requirement of an EEOC charge by filing under Title II of that Act.” For example, the Eleventh Circuit in Bledsoe v Palm Beach County Soil & Water Conservation Dist. (133 F3d 816, 820 [1998]) held that “Title II of the ADA does encompass [public] employment discrimination,” while the Ninth Circuit held in Zimmerman v Oregon Dept. of Justice (170 F3d 1169, 1173 [1999]) that it does not do so.
Although a considerable number of courts have held that title II can be used for employment discrimination claims, the better reasoned decisions have held that employment discrimination claims must be brought under ADA title I. In Scherman v New York State Banking Dept. (2010 WL 997378, 2010 US *448 Dist LEXIS 26288 [SD NY 2010], affd 443 Fed Appx 600 [2d Cir 2011]), the court cogently explained why title II of the ADA does not apply to employment discrimination claims. The Scherman court first noted that
“[t]he structure of the ADA demonstrates Congress’ clear intent for Title II not to apply to employment claims. First, ADA Title I, titled ‘Employment’ by Congress, contains detailed employment provisions. See 42 U.S.C.§ 12112. ADA Title II, titled ‘Public Services’ by Congress, lacks any employment provisions. See 42 U.S.C. § 12132. Under Title I, a ‘ “qualified individual” ’ with a disability ‘means an individual who . . . can perform the essential functions of the employment position. . . .’ 42 U.S.C. § 12111(8). Title II, however, defines the same phrase as ‘an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.’ 42 U.S.C. § 12131 (2). Thus, while Title I defines a ‘qualified individual’ with a disability in terms of employment, Title II defines it on the basis of a person’s ability to receive services or participate in programs or activities. See, e.g., Zimmerman v. Oregon Dep’t of Justice, 170 F.3d at 1176. Congress’ omission of any mention of employment in Title II is presumed to be an intentional exclusion.” (2010 WL 997378, *8, 2010 US Dist LEXIS 26288, *29-30.)
The Scherman court next observed that
“if employment discrimination claims were allowed to be brought under ADA Title II, Title I would become redundant. Under Title I, an ‘employer’ is a ‘a person engaged in an industry affecting commerce who has 15 or more employees.’ 42 U.S.C. § 12111 (5). Holding Title II to apply to employment discrimination claims would render the particularity with which Congress defined an employer to be superfluous.” (2010 WL 997378, *9, 2010 US Dist LEXIS 26288, *31.)
Judge Hurd employed a similar analysis in Chiesa v New York State Dept. of Labor (638 F Supp 2d 316, 321 [ND NY 2009]):
“[A] claim of employment discrimination under Title II must fail because of the significant differ *449 enees in the text between Title I and Title II. The regulations for Title II refer to general services and programs, but Title I refers to specific aspects of employment, such as hiring, the number of employees necessary to qualify as an employer, and promotions. 28 C.F.R. § 35.130 (2008), 29 C.F.R. §§ 1630.2-.4 (2008). Given the specific steps taken by Congress to tailor Title I for employers, Title II is too generic for use against employers and is not intended for such use” (citations omitted).
The Scherman court also pointed out that “Title I incorporates the remedies and procedures of Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 12117(a), while Title II incorporates provisions from the Rehabilitation Act, see 42 U.S.C. § 12133” (Scherman, 2010 WL 997378, *9, 2010 US Dist LEXIS 262889, *31-32). The difference between the two titles is significant in terms of the need to exhaust administrative remedies: “Unlike Title I, Title II does not require a plaintiff to exhaust his administrative remedies prior to filing suit. Therefore, allowing a plaintiff to bring an employment discrimination suit under Title II allows him to bypass the administrative exhaustion requirement of Title I.” (Syken v State of New York, 2003 WL 1787250, *9, 2003 US Dist LEXIS 5358, *28 [SD NY 2008] [citations omitted].)
The fact that title II regulations and title I regulations are promulgated by different agencies lends further support to the argument that title II is not intended for employment discrimination claims:
“Congress delegated regulatory authority to promulgate regulations for ADA Title I and Title II to different agencies. Congress gave the EEOC authority to issue regulations to carry out Title I. See 42 U.S.C. § 12116. Title II, on the other hand, gave the Attorney General authority to promulgate regulations. See 42 U.S.C. § 12134 (a).” (Scherman, 2010 WL 997378, *9, 2010 US Dist LEXIS 26288, *29-30.)
As the Ninth Circuit observed in Zimmerman v Oregon Dept. of Justice (at 1178), “If both Title I and II apply to disability discrimination in employment, then it is possible for state and local governments to be subjected to conflicting regulations.”
The court finds that employment discrimination claims cannot be brought under title II of the ADA.
*450 Defendants’ motion to dismiss the third, fourth and fifth causes of action insofar as they allege employment discrimination claims under title II of the ADA is granted.
The Rehabilitation Act
Plaintiff alleges that defendants violated the provisions of Rehabilitation Act of 1973 § 504 (29 USC § 794 [a]), by their “discriminatory and retaliatory acts and omissions.” Plaintiff alleges that she was disabled within the meaning of the Act and further alleges that her “request for reasonable accommodation constitutes protected activity” under the Act.
Defendants contend that plaintiff was required to exhaust her administrative remedies by filing an administrative charge with the Equal Employment Opportunity Commission prior to commencement of an action under the Rehabilitation Act. In Freed v Consolidated Rail Corp. (201 F3d 188, 194 [3d Cir 2000]), the court held “that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies.” The Ninth Circuit in Smith v Barton (914 F2d 1330, 1338 [1990]) held that “private plaintiffs suing under section 504 need not first exhaust administrative remedies.” In Petersen v University of Wis. Bd. of Regents (818 F Supp 1276, 1278-1279 [WD Wis 1993]), the court stated unequivocally that “[t]here is no dispute that the Rehabilitation Act of 1973 does not require non-federal employees to exhaust administrative remedies prior to bringing a private right of action in federal court.”
Since plaintiff was not a federal employee, she was not required to exhaust administrative remedies prior to bringing an action pursuant to the Rehabilitation Act (29 USC § 794 [a]).
Requesting an accommodation is “protected activity” for purposes of a retaliation claim. (Wright v CompUSA, Inc., 352 F3d 472, 477 [1st Cir 2003]; see also Shellenberger v Summit Bancorp, Inc., 318 F3d 183, 191 [3d Cir 2003] [a good faith request for a reasonable accommodation is protected against retaliation]; Haulbrook v Michelin N. Am., 252 F3d 696, 706 [4th Cir 2001].)
Defendant’s motion to dismiss the third, fourth and fifth causes of action insofar as they are based upon violations of the Rehabilitation Act is denied.
Sixth Cause of Action
Defendants seek to dismiss the sixth cause of action, alleging violations of the Human Rights Law (Executive Law § 290 et seq.) on the ground that plaintiff did not serve a notice of *451 claim as required by section 52 of the County Law. Section 52 of the County Law requires that a notice of claim be filed in compliance with General Municipal Law § 50-e. In Mills v County of Monroe (59 NY2d 307, 308 [1983]), the Court held that a claim brought pursuant to Executive Law § 296 must be dismissed based upon the plaintiffs failure to serve a notice of claim in compliance with section 52 of the County Law.
Although plaintiff did file a notice of claim, there are no allegations in the notice of claim concerning discrimination or violation of the Human Rights Law. Defendants’ motion to dismiss the sixth cause of action is granted.